55 P.3d 845

**Linda J. TETREAULT,**
**Plaintiff–Appellee,**

v.

**Mark D. TETREAULT, Defendant–**
**Appellant.**

Nos. 23761, 24292.

Intermediate Court of Appeals of Hawai'i.

Sept. 13, 2002.

Certiorari Denied Oct. 24, 2002.

Stephen T. Hioki, Honolulu, on the briefs, for Defendant–Appellant.

Paul A. Tomar (Ashford & Wriston, of counsel), Honolulu, on the briefs, for Plaintiff–Appellee.

BURNS, C.J., WATANABE and FOLEY, JJ.

Opinion of the Court by BURNS, C.J.

In this opinion, we discuss sundry subjects, including (a) some of the family court's duties, (b) the family court's lack of jurisdiction to enter orders while the case is on appeal, (c) precedent relevant to the question of awarding physical custody to a parent contemplating moving to another state where both parties are equally fit to have physical custody, and (d) Hawai'i Family Court Rules (HFCR) Rule 62(a) (2002).

The relevant events occurred in the following chronology: [1]

On July 11, 1981, Defendant–Appellant Mark D. Tetreault (Father) and Plaintiff–Appellee Linda J. Tetreault (Mother) were married in Cook, Illinois.[2]

On June 3, 1995, Mother gave birth to twins, a daughter and a son (Children).

On June 9, 1999, Mother filed a complaint for divorce.

On June 30, 1999, a Stipulated Order for Pre Decree Relief, entered by District Family Judge Allene Suemori, awarded custody of the children to Mother subject to Father's rights to visitation at specified times.

On a court form, Judge Suemori also entered an Order Appointing Custody Guardian Ad Litem stating, in relevant part, as follows:

> Pursuant to the provisions of §§ [sic] 571–46(8), Hawai'i Revised Statutes, as amended, and good cause appearing therefor, IT IS ORDERED THAT:

1. Except where otherwise expressly indicated, District Family Judge Darryl Y.C. Choy presided in this case.

2. The parties moved to Hawai'i in 1985.

3. Although only Hawai'i Revised Statutes (HRS) § 571–46(8) is cited, it is clear that the guardian

1. APPOINTMENT. *Marvin Acklin, Ph.D.* is appointed a guardian ad litem to represent the interests of the child[ren]. The guardian ad litem has party status.

2. TERMS OF APPOINTMENT.

   (a) [X] This appointment is for an investigation and report at the next hearing. . . .

   (b) [X] This appointment is until the trial on the outstanding custody issue. . . .

   . . . .

7. GENERAL POWERS AND DUTIES OF A GUARDIAN AD LITEM.

   (a) . . . The guardian ad litem assumes the role of an advocate for the ward's interests. Therefore, the guardian ad litem stands in the ward's shoes and exercises substitute judgment for the ward.

   (b) In fulfilling this child-centered role, the guardian ad litem performs ten important and interrelated duties:

   (1) acts as an independent fact finder (or investigator) whose task it is to review all relevant records and interview the ward, parents, social workers, teachers and other persons to ascertain the facts and circumstances of the ward's situation;

   . . . .

   (4) provides written reports of findings and recommendations to the court at each hearing to assure that all the relevant facts are before the court[.] [3]

(Footnote added.)

On November 9, 1999, Dr. Acklin filed his report recommending that Mother be awarded custody of the Children.

ad litem was appointed also pursuant to HRS § 571–46(4). The former statute authorizes the appointment of "a guardian ad litem to represent the interests of the child[.]" The latter statute authorizes the court to "require an investigation and report concerning the care, welfare, and custody of any minor child of the parties."

On February 23, 2000, Judge Suemori entered Pretrial Order No. 2, which "expanded" Father's specified times of visitation.

On May 15, 2000, Judge Suemori entered the stipulated Order Appointing Custody Guardian Ad Litem appointing Janice Wolf (Wolf) as custody guardian ad litem (CGAL) "for the investigation and evaluation of [Mother's] proposed re-location to Chicago, [Illinois]."

On July 12, 2000, Wolf filed her report "praising the schools, job market, prosperity, and low-crime environment of Naperville[, Illinois]."

Trial was held on July 21, 2000, and July 24, 2000.

On August 7, 2000, pursuant to HFCR (HFCR) Rule 62(a)[4] which allows a stay pending appeal, Father moved for a stay of "the oral ruling after trial on July 31[sic], 2000 which allows [Mother] to leave the City and County of Honolulu, State of Hawai'i with the minor children of the marriage[.]" A hearing on this motion was held on August 17, 2000.

On August 21, 2000, the family court entered an Order Denying Motion for Stay, decided that the motion was "inappropriate" and "sanctionable under Rule 11, HFCR" and ordered Father to pay attorney fees to be determined, and ordered the attorney for Mother to submit an affidavit regarding attorney fees.

On September 14, 2000, the family court entered its Decree Granting Absolute Divorce and Awarding Child Custody (Divorce Decree), which awarded legal and physical custody of the children to Mother. Paragraph 8 of the Divorce Decree states as follows: "The Court hereby permits Mother to remove the children from the City and County of Honolulu to a permanent residence outside the City and County of Honolulu. Specifically, Mother and the children shall be allowed to relocate to Naperville, Illinois."

On September 25, 2000, appeal no. 23761 commenced when Father filed a notice of appeal of the Divorce Decree.

On March 19, 2001, in no. 23761, Father filed his opening brief in which he asserted the following:

1. The family court erred in not filing findings of fact and conclusions of law as required by Hawai'i Family Court Rules (HFCR) Rule 52(a) (2001).

2. The family court erred in awarding custody to Mother who was contemplating moving to another state where both parties are equally fit to have custody and there was no showing that the children's well-being would be better served by such a move.

3. The family court erred in excluding testimony from Dr. William Wright regarding the effects that Mother's removal of the parties' minor children from Hawai'i to Illinois would have on the relationship between the children and Father.

On March 23, 2001, in response to the court's August 21, 2000 order, Mother's attorney submitted an affidavit in support of attorney fees of $3,186.99.

On April 12, 2001, the family court entered an Order Granting Attorney's Fees to Plaintiff, which failed to state the amount of the fees awarded.

On April 25, 2001, the family court entered an Amended Order Granting Attorney's Fees to Plaintiff, which ordered Father to pay to Mother attorney fees of $3,186.99.

On May 23, 2001, appeal no. 24292 commenced when Father filed a notice of appeal of the April 25, 2001 order.

On May 29, 2001, in no. 23761, Mother filed an answering brief, and on June 12, 2001, Father filed his reply brief.

On June 14, 2001, the family court entered its Findings of Fact, Conclusions of Law, and Order Granting Full Physical and Legal Custody of the Minor Children to Plaintiff Linda J. Tetreault (FsOF, CsOL and Order) that had been prepared by Mother's attorney.

---

4. Hawai'i Family Court Rules (HFCR) Rule 62(a) (2002) states, in relevant part, as follows: "When an appeal is taken from any judgment relating to the custody or support of a child or spousal support, the court in its discretion may suspend, modify or grant such judgments during the pendency of the appeal upon such terms as it considers proper."

On October 4, 2001, in no. 24292, Father filed an opening brief[5] in which he asserted the following:

1. The family court erred in not filing findings of fact and conclusions of law as required by HFCR Rule 52(a).

2. The family court erred in allowing Mother's counsel to submit an affidavit as the basis for the amount of attorney fees under HFCR Rule 11.

3. The family court lacked jurisdiction to enter the April 12, 2001 order and the April 25, 2001 order.

On May 3, 2002, this court entered an order consolidating no. 23761 and no. 24292.

## DISCUSSION

### APPEAL OF THE DIVORCE DECREE

Father contends that the family court failed to comply with the requirements of HFCR Rule 52.[6] HFCR Rule 52, as amended effective January 1, 2000, states as follows:

**FINDINGS BY THE COURT.**

**(a) Effect.** In all actions tried in the family court, the court may find the facts and state its conclusions of law thereon or may announce or write and file its decision and direct the entry of the appropriate judgment; except upon notice of appeal filed with the court, the court shall enter its findings of fact and conclusions of law where none have been entered, unless the written decision of the court contains findings of fact and conclusions of law. To aid the court, the court may order the parties or either of them to submit proposed findings of fact and conclusions of law, where the written decision of the court does not contain the findings of fact and conclusions of law, within 10 days after the filing of the notice of appeal, unless such time is extended by the court. Requests for findings are not necessary for purposes of review. Findings of fact if entered shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If a decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

**(b) Amendment.** Upon motion of a party made not later than 10 days after entry of judgment the court may amend its findings or make additional findings and may amend the judgment accordingly. The motion may be made with a motion for a new trial pursuant to Rule 59. When findings of fact are made by the court, the question of sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the family court an objection to such findings or has made a motion to amend them or a motion for judgment.

**(c) Submission of Draft of a Decision.** At the conclusion of a hearing or trial, or at such later date as matters taken under advisement have been decided, the judge for convenience may designate the attorney for one of the parties to prepare and submit a draft of a decision, containing such provisions as shall have been informally outlined to such attorney by the judge. The attorney requested to prepare the proposed decision shall, within 10 days, unless such time is extended by the court, deliver a draft of the decision to the division clerk. Upon review and finalization of form by the judge, the decision shall be entered.

---

5. In no. 24292, Plaintiff Appellee Linda J. Tetreault did not file an answering brief.

6. This court has previously noted that "HFCR Rule 52(a) evinces a somewhat different approach than that of HRCP [Hawai'i Rules of Civil Procedure] Rule 52(a). HFCR Rule 52(a) does not impose the obligation to make any findings or conclusions prior to an appeal[,]" whereas HRCP Rule 52(a) does so require. *State v. Gon-*

*sales,* 91 Hawai'i 446, 448, 984 P.2d 1272, 1274 (App.1999).

Presently, the HFCR do not require notification of the family court that a notice of appeal has been filed nor do they require the findings and conclusions to be filed by the family court within a certain period of time after the notice of appeal has been filed.

The family court did not enter a written decision in this case. Thus, as noted above, when Father filed his September 25, 2000 notice of appeal, HFCR Rule 52(a) required the family court to enter its findings of fact and conclusions of law.

Although HFCR Rule 52(a) does not require a request for the entry of findings of fact and conclusions of law where none have been entered, much time and expense is wasted if the appellant does not make a reasonable effort to cause the entry of such findings and conclusions by the family court before the appellant files an opening brief. This is because the usual response to a point on appeal complaining of the absence of findings and conclusions is a temporary remand to the family court for entry of findings and conclusions and an order for transcripts and rebriefing after such entry. Thus, Father could have (1) sought to have the family court comply with its duty pursuant to HFCR Rule 52(a) and (2) sought permission, pursuant to HRAP Rule 29, to delay the filing of his opening brief until a reasonable time after the family court complied with its duty pursuant to HFCR Rule 52(a) and until he could obtain any relevant transcripts deemed necessary for the appeal.

On June 14, 2001, while this case was on appeal but after all briefs were filed, the family court entered its FsOF, CsOL and Order solely with respect to the issue of child custody. The family court had jurisdiction to enter those FsOF and CsOL. "Once an appeal is filed, . . . a family court's obligation to enter findings and conclusions is triggered. Such findings and conclusions, then, were intended to be made a part of every appellate record." *State v. Gonsales*, 91 Hawai'i 446, 448, 984 P.2d 1272, 1274 (App.1999). The family court lacked jurisdiction to enter the "Order" part of the FsOF, CsOL and Order.

> The FsOF and CsOL begin by stating that [p]ursuant to Rule 52(a) of the Hawai'i Family Court Rules, this Court hereby enters the following findings of fact, conclusions of law, and order with respect to the award of child custody only. The contents of this document do not affect the provision of the Divorce and Child Custody Decree.

The fact that the family court limited its FsOF and CsOL to the part of this case involving child custody appears harmless because the opening brief filed by Father demonstrates that Father does not challenge any other part of the Divorce Decree.

In no. 23761, Father does not challenge any of the FsOF. Therefore, they are facts in this case.[7]

■ Father contends that the family court erred in awarding physical custody to Mother who was contemplating moving to another state where both parties are equally fit to have physical custody, and there was no showing that the children's well-being would be better served by such a move.[8] This

---

7. Father filed his opening brief and reply brief before the family court entered its findings and conclusions. Father could have asked for the opportunity to file an amended opening brief challenging one or more of the findings, but did not.

8. In *Gillespie v. Gillespie*, 40 Haw. 315, 320–21 (1953), the Hawai'i Supreme Court stated, in relevant part, as follows:

> Pursuant to the general rule of custody that the welfare of the children has paramount consideration, this court consistently has given preference over the father in favor of the mother where her custody appears more beneficial to the child. That does not mean, however, that custody will not be awarded to the father where his custody appears more beneficial than the mother's. On the contrary, it means that the welfare of the child is pre-eminently the thing to be considered and is far superior to the claims of either parent whose personal wishes and desires must be made to yield if seemingly opposed to such welfare.

> To insure that welfare, the children of divorced parents on entry of the decree become wards of the court and will not be permitted to be removed from its protective jurisdiction unless their well-being and future welfare will be the better subserved thereby. Consistent therewith, courts in awarding custody ordinarily will prefer a resident parent over the other parent who is either a nonresident or a resident contemplating immediate removal from the jurisdiction where both parents are equally fit to have custody. Nevertheless, the welfare of the children continues to be paramount over the claims of either parent, be he or she the resident or nonresident. For a child to be in the custody of a resident, however, is a benefit in itself to the child as a ward of the court within its protective jurisdiction. When a child has been given that benefit by a decree of divorce, the party seeking to divest the child thereof by changing custody to a nonresident has the burden of proof to show that the change will be clearly for the best interests and future welfare of that child.
> (Citations omitted.)

In *Maeda v. Maeda*, 8 Haw.App. 139, 794 P.2d 268 (1990), the family court found "that Mother and Father were ready, willing, and qualified to serve as Son's sole legal and physical custodian" and ordered that "Father shall be awarded sole legal and physical custody of the parties' minor child, one (1) week prior to the departure by Mother to the mainland should Mother decide to move." *Id.* at 141–42, 794 P.2d at 269 (brackets omitted). In response to Mother's appeal, this court stated, in relevant part, as follows:

Mother has a right to Son's legal and physical custody only when it is in Son's best interests. Here, the family court's decision is not based on Mother's planned move from Hawai'i to somewhere in California or Florida. It is based on the lack of any relevant evidence to determine the effects Mother's move with Son will have on Son. Mother is free to move. If she moves, however, her existing legal right to Son's physical custody is automatically terminated and awarded to Father until she proves. in court, as a matter of fact, that it will be in Son's best interests to move with her.

In the usual case, if it is in a child's best interests to be in the mother's sole legal and physical custody, that will be true no matter where the mother chooses to live with her child. *See Estrella v. Estrella*, 43 Haw. 210 (1959). In this case, however, the evidence forced the family court to choose between a situation and circumstances in Hawai'i that are known to be beneficial to Son, even if Mother is elsewhere, and an unknown situation and circumstances somewhere in. California or Florida. As noted above, the family court's ultimate finding of fact, that it would be in Son's best interests to remain with Father in Hilo if Mother leaves Hawai'i, is not clearly erroneous.

*Id.* at 144, 794 P.2d at 270.

Across the country, the law applicable to interstate relocation of a child by a parent is diverse. For example, in Michigan,

"[a] judgment or order awarding custody of a minor must provide that (1) the domicile or residence of a minor may not be moved from Michigan without the approval of the judge who awarded custody or the' judge's successor...." Michigan further requires that a moving party prove, by a preponderance of the evidence, that removal is warranted. A trial court must analyze the four factors set forth in the 1976 seminal case: *D'Onofrio v. D'Onofrio*, 144 N.J.Super. 200[,] 365 A.2d 27 [(1976)]. Scott, *Change of Domicile*, 78 MICH. B.J. 36 (1999) (footnotes omitted). As noted in *Anderson v. Anderson*, 170 Mich.App. 305, 309, 427 N.W.2d 627, 629 (1988), those four *D'Onofrio* factors are:

(1) whether the prospective move has the capacity to improve the quality of life for both the custodial parent and the child; (2) whether the move is inspired by the custodial parent's desire to defeat or frustrate visitation by the noncustodial parent and whether the custodial parent is likely to comply with the substitute visitation orders where he or she is no longer subject to the jurisdiction of the courts of this state; (3) the extent to which the noncustodial parent, in resisting the move, is motivated by the desire to secure a financial advantage in respect of a continuing support obligation; and (4) the degree to which the court is satisfied that there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parental relationship with the noncustodial parent if removal is allowed.

In Missouri, a statute mandates that

"A person entitled to the custody of a child shall not change the residence of the child to another state or remove the child from this state for a period of time exceeding ninety days except upon order of the court or with the written consent of the parties with custody or visitation rights...." In determining whether to grant the custodial parent's motion, the paramount concern is the best interests of the child.

*Carter v. Schilb*, 877 S.W.2d 665, 667 (Mo.App. 1994) (citations omitted).

In New York, all relevant facts are considered, with predominant emphasis placed on what outcome is most likely to serve the best interests of the child. *Tropea v. Tropea*, 87 N.Y.2d 727, 642 N.Y.S.2d 575, 665 N.E.2d 145 (1996).

In Minnesota, where the custodial parent seeks to permanently move the children to another state over the non-custodial parent's objection, an evidentiary hearing is not required absent a prima facie case of endangerment or that the move was intended to deprive the non-custodial parent of visitation. *Silbaugh v. Silbaugh*, 543 N.W.2d 639 (Minn.1996).

In California, pursuant to West's Ann. Cal. Fam.Code § 7501, the custodial parent has a presumptive right to relocate with the minor child, subject to the power of the court to restrain a .change that would prejudice the rights or welfare of the child. *In Re Marriage of Burgess*, 13 Cal.4th 25, 913 P.2d 473, 51 Cal.Rptr.2d 444 (1996).

With respect to constitutional concerns, it relevantly has been observed that:

[m]ost courts do not determine the outcome of relocation cases based on the constitutional issues, but many make comments pertaining to their concerns over constitutional matters, or disparate treatment of custodial, versus noncustodial parents who wish to relocate with their children. A review of court opinions reveals several common constitutional themes. Courts generally discuss constitutional matters either in terms of the state impinging upon individual rights, such as the right to parent, to travel, to remarry, and to have possession of or access to one's child, or the courts apply an "equal protection" analysis.

A. Individual Constitutional Rights

contention lacks a factual basis. The FsOF state, in relevant part, as follows:

19. This Court believes the testimony of Dr. Acklin, Mother, Mother's friends and Ms. Wolf. Specifically, the unbiased testimony of Dr. Acklin has credibly established that: a) Mother is the primary caregiver for the Children; b) it was in the best interests of the Children to award full custody to Mother, regardless of the move to Naperville; and c) Mother suffers from no mental impairment which detrimentally affects her parenting ability.

. . . .

23. This Court also finds that the move to Naperville would serve the best interests of the Children. Based on Mother's testimony as well as the report and testimony of Ms. Wolf, Mother furnished substantial evidence that Naperville contains excellent schools for the Children, possesses good job opportunities for Mother, and is a low-crime, family-friendly, unpolluted environment.

. . . .

28. Looking at all the evidence in the record, this Court finds and determines that it is in the best interests of the Children to award full physical and legal custody of the Children to Mother, and that, given the totality of circumstance[s], Mother's proposed relocation to Naperville is in the best interest of the children.

■ Father contends that the family court erred in excluding testimony from Dr. William Wright regarding the effects that Mother's removal of the parties' minor children from Honolulu to Illinois would have on the relationship between the children and Father. In light of FsOF Nos. 12 and 13, quoted *infra*, we disagree.

In ruling on a pretrial motion in limine, the family court ruled, in relevant part, as follows:

As to Dr. Wright, I believe it would ·be improper for Dr. Wright to tell this court whether mother or father would be a better parent. I think Dr. Wright can tell this court what his professional opinions about mother, whether or not she is an appropriate parent, but as for a determination of

While domicile restrictions are not decided on a constitutional basis, some courts do recognize the potential for violation of parents' rights to certain individual freedoms, including the right to travel and choose where one will live. Such factors may be viewed as tempering the right of the trial court to restrict the custodial parent from relocating the child.

Courts have disagreed over whether restrictions placed on a parent's right to relocate with children infringe on personal constitutional rights. For example, the New Mexico Supreme Court observed that requiring a moving parent operating under a joint physical custody arrangement to show a move to be in the child's best interest violates that parent's right to travel; and, furthermore, that requiring the non-moving party to show a proposed move to be contrary to the child's interests violates the liberty interest of that parent.

Courts that find no constitutional violations generally distinguish between a restriction placed on the parent's right to relocate and the parent's right to remove the child when it is not in the child's best interest to do so. In *Carter v. Schilb*, for example, the Missouri appellate court held that the denial of the mother's right to take the children with her out of the state was not a denial of her constitutional

right to travel or of the right of freedom of personal choice in matters such as remarriage and family life.

B.  Equal Protection Clause

Additional constitutional concerns arise over requiring the custodial parent to obtain consent of the court to relocate, when the noncustodial parent is not required to obtain anyone's "permission" to move. The noncustodial parent is free to relocate and thereby break the "continuing and frequent contact" with the child with no interference from the courts. The Burgess court held that no statutory basis existed for imposing a specific additional burden of persuasion on either parent to justify a choice of residence as a condition of custody, and observed that both parents have needs following divorce to secure or retain employment, pursue career or educational opportunities, or reside in the same location as a new spouse or other family or friends.

It has been critically noted that the divorced family is subject to restrictions not equally applied to intact families. The South Dakota Supreme Court held that custodial parents are entitled to the same options that noncustodial parents, or intact families, have to seek a better life for themselves and their children.

Terry, Proctor, Phelan & Womack, *Relocation: Moving Forward, or Moving Backward?*, 10 J. Am. Acad. Matrim Law 167, 213–15 (1998) (footnotes omitted).

what's best for the kids between mom or dad, I think Dr. Wright is probably disqualified from doing so. We'll wait until we get to that point before an objection is made. It will however probably be sustained unless there's more information.

The following FsOF accurately describe the relevant events at the trial.[9]

12. Father sought to introduce Dr. Wright's testimony on the effect of the move on the Children's relationship with Father, but Mother objected on the grounds that: a) Father failed to file a pretrial report disclosing Dr. Wright's proposed testimony and thereby violated the discovery requirements of this Court's November 12, 1997 Memorandum on First Circuit Domestic Division Procedures and Polices (Effective 1/1/98) ("Family Court's November 12, 1997 Memorandum"); and b) Dr. Wright was not qualified to render an expert opinion on the effect of the move because Dr. Wright never met with the Children but only treated the parties.

13. Agreeing with Mother, this Court excluded Dr. Wright's testimony based on the violation of the disclosure deadlines in

the Family Court's November 12, 1997 Memorandum and Dr. Wright's lack of competency to furnish an expert opinion on the effect of the move on the Children's relationship with Father. This Court's decision was based on the early granting in part of Mother's pretrial motion in *limine* to restrict the scope of Dr. Wright's testimony to his treatment of Mother and his professional opinions about her. This Court therefore limited Dr. Wright's testimony to his medical evaluation of the parties.

## APPEAL OF ORDER AWARDING ATTORNEY FEES

■ Regarding his appeal of the April 25, 2001 Amended Order Granting Attorney's Fees to Plaintiff, Father contends that the family court erred in not filing findings of fact and conclusions of law as required by HFCR Rule 52(a). He erroneously assumes that the hearing on his August 7, 2000 HFCR Rule 62(a) motion was an "action tried in the family court" as that phrase is used in HFCR Rule 52(a).

....

THE COURT: I think this particular case probably could go on for a whole week if I allow it, and I will not allow it.

Although we are aware of the time limitations faced by the family court in these cases and the discretion of the family court to place reasonable time limits on the presentation of evidence, we remind the family court of (1) the requirement of Canon 3B(7) of the *Code of Judicial Conduct* (2002) that "[a] judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law[,]" and (2) the precedent that the rule of *stare decisis* "acts ... to require obedience by inferior tribunals to the decisions of superior courts[.]" *Robinson v. Ariyoshi*, 65 Haw. 641, 653 n. 10, 658 P.2d 287, 297 n. 10 (1982).

Assuming a custodial parent's right to move "is of a constitutional dimension," that right is not the same as a custodial parent's right to move his or her minor child. The criteria for awarding the custody of a minor child "to either parent or both parents" is, as stated in HRS § 571 46(1) (2001), "the best interests of the child." As indicated in *Maeda*, there are unusual situations where, when the resident custodial parent decides to relocate, the best interests of the child require a change of custody to the resident noncustodial parent who is not relocating.

9. At the trial, when Dr. William Wright was on the stand, the court and the counsel for Father engaged in the following discussion:

[COUNSEL FOR FATHER]: It's not whether the move is good or not. It's just what's gonna happen between father and son. And I think that this is something that should be allowed because both parties-

THE COURT: Counsel, if I hear from every health care provider about a move, no move would ever take place. Okay. Simply that. You understand to move is of a constitutional dimension. It may not even fall into the best interest test.

[COUNSEL FOR FATHER]: I think it does under [*Maeda v. Maeda*, 8 Haw.App. 139, 144, 794 P.2d 268 (1990) ], Your Honor.

THE COURT: I think it may not. I believe Maeda might be incorrect because if this court's to rule on each move best interest, people cannot move from Kaimuki to Kahala. They cannot move from Wai['Janae to Leeward 'cause all of these include changes in one's life.

[COUNSEL FOR FATHER]: Then it's a question of fact whether or not—

....

[COUNSEL FOR FATHER]:-the move is significant. But you'd have to take a look at the evidence first, Your Honor.

THE COURT: Counsel, if I gave everybody enough time, move cases would take six months. All right.

Father further contends that the family court erred when it allowed Mother's counsel to submit the amount of counsel's fees by affidavit and without a hearing. It appears that he is unaware that it was his burden to file an objection and move for a hearing.

■ Finally, Father contends that the family court lacked jurisdiction to enter the April 12, 2001 order and the April 25, 2001 order. Father's basis is that HFCR Rule 59(e) allowed only ten days after the August 21, 2000 Order Denying Motion for Stay Filed August 7, 2000, within which to amend it, and allowed only ten days after the April 12, 2001 order within which to amend it. It appears that Father is unaware of the applicability of HFCR Rule 60(a) allowing the correction of mistakes and errors caused by the court by its oversight or omission.

■ In light of HFCR Rule 62(a), however, we disagree with the family court's conclusion that Father's August 7, 2000 motion was "inappropriate" and "sanctionable under Rule 11, HFCR[.]" As noted in footnote 4 above, when an appeal is taken from a judgment relating to the custody of a child, HFCR Rule 62(a) permits a stay of the judgment pending appeal.

## CONCLUSION

Accordingly, we affirm the August 21, 2000 Order Denying Motion for Stay, except that we vacate all parts other than the order denying the motion for a stay.

We affirm the family court's September 14, 2000 Decree Granting Absolute Divorce and Awarding Child Custody.

We vacate the family court's April 12, 2001, Order Granting Attorney's Fees to Plaintiff, and April 25, 2001, Amended Order Granting Attorney's Fees to Plaintiff.

We vacate the "Order" part of the family court's Findings of Fact, Conclusions of Law, and Order Granting Full Physical and Legal Custody of the Minor Children to Plaintiff Linda J. Tetreault entered on June 14, 2001.