**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000610
31-JUL-2020
07:53 AM**

NO. CAAP-19-0000610

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


NB, Plaintiff-Appellant,
v.
GT, Defendant-Appellee


APPEAL FROM THE FAMILY COURT OF THE THIRD CIRCUIT
(FC-D NO. 12-01-056K)


MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Chan and Hiraoka, JJ.)

Plaintiff-Appellant NB (**Mother**) appeals from the "Order re Plaintiff's Motion and Declaration for Post-Decree Relief filed on 06/21/2018 and Defendant's Motion for Post-Decree Relief to Modify Physical Custody and Visitation Orders filed on 04/23/2019" (**2019 Post-Decree Order**) entered on August 6, 2019 in favor of Defendant-Appellee GT (**Father**) by the Family Court of the Third Circuit (**Family Court**).[1]  In the 2019 Post-Decree Order, the Family Court, *inter alia*, denied Mother's post-decree motion to relocate Mother and Father's three minor children, S.K.T., K.K.T, and Z.K.T., to the state of Washington and granted Father's motion for joint physical custody of the children.

On appeal, Mother challenges the Family Court's 2019 Post-Decree Order, and the findings of fact (**FOFs**) and conclusions of law (**COLs**) made in relation to the order, "to the

---

[1]  The Honorable Wendy M. DeWeese presided.

extent they are germane to this appeal".[2]  Mother asserts that the Family Court abused its discretion in denying her request to relocate with her minor children and granting Father's request for joint physical custody, arguing that those rulings: (1) were not in the best interest of the children as contemplated under Hawaii Revised Statutes (**HRS**) § 571-46 (2018); (2) were contrary to Hawaii's case law; (3) failed to consider the history of domestic violence by Father, and (4) improperly relied on the recommendation and testimony of the appointed guardian ad litem (**GAL**) because it was based on an incorrect assumption.

For the reasons discussed below, we affirm.

## I. Background

On March 16, 2012, Mother filed a complaint for divorce against Father.  On May 29, 2012, the Family Court entered a Divorce Decree in favor of Mother which, *inter alia*, awarded joint legal custody of the three minor children to Mother and Father, and sole physical custody of the children to Mother, with a detailed visitation/time sharing schedule with Father.  On January 26, 2016, Father filed a post-decree motion for relief seeking to modify his visitation schedule.  On August 22, 2016, the Family Court entered a post-decree order (**2016 Post-Decree Order**), which, *inter alia*, denied Father's motion and adjusted the visitation schedule.[3]

In the 2016 Post-Decree Order, the Family Court made a number of FOFs in relation to its denial of Father's request to adjust the visitation schedule:

> 1.  The Court has concerns for that [sic] the minor children being exposed to violent video games and guns that are inappropriate for their age while in [Father's] care.
> 2.  The children are exhausted when returning from

---

[2]  The Family Court entered its "Findings of Fact, Conclusions of Law re Order re Plaintiff's Motion and Declaration for Post-Decree Relief Filed on 06/21/2018 and Defendant's Motion for Post-Decree Relief to Modify Physical Custody and Visitation Orders Filed on 04/23/2019" on September 20, 2019.

[3]  The Honorable Aley K. Auna, Jr. presided over the Divorce Decree and 2016 Post-Decree Order.

[Father's] house.  This was recognized by the teachers and counselors.

3.  The Court is concerned with the children's access to social media accounts which may place the children in danger, but [Mother] did not meet her burden in proving that the minor children's access to the Internet has placed them in danger.

4.  The parties' minor son was injured while in [Father's] care and did not notify [Mother] for two days, which is not in the best interests of the child, nor does it support [Father's] motion for 50-50 custody.

5.  Both parties appear to be loving, caring parents.

6.  The Court must decide what is in the children's best interests.

7.  <u>There was domestic violence in the past.</u>

8.  The parties have difficulties getting along when it comes to parenting, and this goes against shared custody being in the best interests of the children.

9.  [Father] has not proven by a preponderance of the evidence that there has been a material change in circumstances.

10. It is in the best interests of the minor children for [Mother] to have sole physical custody and for [Mother] and [Father] to have joint legal custody of the children, as provided for in Stipulation Regarding Legal and Physical Custody, Approved and So Ordered by the Honorable Judge Aley K. Akuna, Jr., and filed on April 9, 2013.

11. It is in the best interests of the minor children for the visitation order currently in place to be modified, as set forth in the Order below.

(Emphasis added).

On June 21, 2018, Mother filed a motion for post-decree relief seeking, *inter alia*, sole legal custody and permission to relocate the three children to the state of Washington.  On February 7, 2019, the Family Court entered an order appointing a GAL.  On April 23, 2019, Father filed a competing motion for post-decree relief, seeking, *inter alia*, joint physical custody of the children, or in the alternative, if Mother relocates to Washington, an order granting sole physical custody of the children to Father with reasonable visitation with Mother.

Evidentiary hearings on the motions were held on June 28, 2019, and July 11, 2019.  On August 6, 2019, the Family Court entered the 2019 Post-Decree Order which, *inter alia*, denied Mother's motion to relocate the children and granted Father's motion for joint physical custody, giving rise to this appeal.  On September 20, 2019, the Family Court entered its FOFs and COLs

in relation to the 2019 Post-Decree Order.

### II.  The Family Court properly considered the HRS § 571-46(b) factors in its Post-Decree Order

Mother asserts that the Family Court abused its discretion in denying her request to relocate the children to Washington and in awarding joint physical custody of the children to Father because the HRS § 571-46(b) factors and the best interests of the children weighed in favor of relocation and/or at the very least Mother maintaining sole physical custody over the children.  We conclude that the Family Court did not abuse its discretion and appropriately considered the best interests of the children under the HRS § 571-46(b) factors in its 2019 Post-Decree Order.

"It is well settled that in child custody cases the paramount concern is the best interests of the child."  W.N. v. S.M., 143 Hawaiʻi 128, 135, 424 P.3d 483, 490 (2018) (citation omitted).  Likewise, in cases where one parent wishes to relocate with the children over the objection of the other parent, courts have consistently adhered to the best interests of the child standard as the governing consideration.  See HRS § 571-46(a)(1); see also Fisher v. Fisher, 111 Hawaiʻi 41, 50, 137 P.3d 355, 364 (2006); Waldecker v. O'Scanlon, 137 Hawaiʻi 460, 471, 375 P.3d 239, 250 (2016).  HRS § 571-46(b) provides a non-exhaustive list of factors for the Family Court to consider in determining the best interest of the children.[4]  "The trial court possesses broad

---

[4]  HRS § 571-46(b) provides:

> (b)  In determining what constitutes the best interest of the child under this section, the court shall consider, but not be limited to, the following:
> (1)  Any history of sexual or physical abuse of a child by a parent;
> (2)  Any history of neglect or emotional abuse of a child by a parent;
> (3)  The overall quality of the parent-child relationship;
> (4)  The history of caregiving or parenting by each parent prior and subsequent to a marital or other type of separation;
> (5)  Each parent's cooperation in developing

discretion in making custody decisions and in its determination of what is in the best interests of the child." <u>A.A. v. B.B.</u>, 139 Hawaiʻi 102, 106, 384 P.3d 878, 882 (2016) (citation omitted).

---

       and implementing a plan to meet the child's ongoing needs, interests, and schedule; provided that this factor shall not be considered in any case where the court has determined that family violence has been committed by a parent;

(6)    The physical health needs of the child;

(7)    The emotional needs of the child;

(8)    The safety needs of the child;

(9)    The educational needs of the child;

(10)   The child's need for relationships with siblings;

(11)   Each parent's actions demonstrating that they allow the child to maintain family connections through family events and activities; provided that this factor shall not be considered in any case where the court has determined that family violence has been committed by a parent;

(12)   Each parent's actions demonstrating that they separate the child's needs from the parent's needs;

(13)   Any evidence of past or current drug or alcohol abuse by a parent;

(14)   The mental health of each parent;

(15)   The areas and levels of conflict present within the family; and

(16)   A parent's prior wilful misuse of the protection from abuse process under chapter 586 to gain a tactical advantage in any proceeding involving the custody determination of a minor. Such wilful misuse may be considered only if it is established by clear and convincing evidence, and if it is further found by clear and convincing evidence that in the particular family circumstance the wilful misuse tends to show that, in the future, the parent who engaged in the wilful misuse will not be able to cooperate successfully with the other parent in their shared responsibilities for the child. The court shall articulate findings of fact whenever relying upon this factor as part of its determination of the best interests of the child. For the purposes of this section, when taken alone, the voluntary dismissal of a petition for protection from abuse shall not be treated as prima facie evidence that a wilful misuse of the protection from abuse process has occurred.

On appeal, Mother reiterates many of the arguments she made to the Family Court in the underlying proceedings.  Mother asserts that she has maintained sole physical custody of the children and has performed all of the day-to-day care of the children since the Divorce Decree was entered in 2012.  Mother points to the alleged shortcomings of Father's care of the children, including a lack of structure and enforcement of rules, and occasions where the children were injured while in his care.  Mother also notes that she has never interrupted Father's visitation with the children, despite the alleged domestic violence that Father has subjected her to and his failure to pay child support.

Mother also asserts the record establishes that relocation to Washington with Mother is in the best interests of the children.  Mother notes that the cost of living in Washington, including housing costs, are significantly lower than in Hawaiʻi.  Mother further notes that based on her research, the area of Washington where she intends to move offers the children access to better educational opportunities and medical care, which is especially important in light of an allergy condition suffered by Z.K.T.  Mother also notes that she has received informal job offers at two different companies in Washington.  Mother also asserts that the children will continue to receive the support of their extended family, as her current partner is moving to Washington, and her parents intend to join her as soon as they are able to sell their house in Hawaiʻi.

However, the Family Court considered all of these arguments in its evaluation of the HRS § 571-46(b) factors, and within its discretion, ultimately concluded that it was in the children's best interests to remain in the state of Hawaiʻi, and for Father to be granted joint physical custody of the children.

In considering the history of care giving or parenting by each parent, the Family Court concluded that while Mother became the primary custodial parent during the school week pursuant to the 2016 Post-Decree Order, Father has maintained

6

substantial time with the children during weekends, holidays, and vacations.  The Family Court further found that Father is active in the children's school and sports activities, and that "while the parents do not share exactly equal time with their children, [Father] has a substantial and meaningful role in the children's lives."

The Family Court further concluded that each parent has made fairly equal efforts to ensure that their children's needs are met.  While Mother has been responsible for a majority of the weekday care of the children by virtue of the 2016 Post-Decree Order, the Family Court found that Father "has maximized the opportunities he does have during the week and weekends to be with his children[,]" and there is no evidence Father is unwilling or unable to care for the children's medical needs. The testimony presented to the Family Court support the court's conclusion.

In regards to Father's parenting style, the Family Court noted that while some of the children have been injured while in both parents' care, both parents handled the situations appropriately and have addressed the accidental injuries.  The Family Court noted that both parents had strengths and weaknesses, and the children ultimately benefitted from having a relationship with both Father and Mother.

In regards to the areas and levels of conflict between the parties, the Family Court indicated that the level of conflict has been relatively low, and that both Mother and Father have been able to cooperate and co-parent with each other.  As discussed in more detail *infra*, the record is devoid of any finding by the Family Court of family violence on the part of Father.  The Family Court also noted that while it appears that Father owes Mother a significant amount in child support arrearages, the exact amount appears to legitimately be in dispute based on prior court orders and agreements by the parties.

The Family Court also made numerous FOFs and COLs explaining why it did not believe it was in the children's best interest to be relocated to Washington.  The Family Court found that there is limited information about the proposed relocation, including what schools the children would attend, their long-term housing arrangements, a clear description of the local community, Mother's employment, and whether Mother's partner would contribute financially to the household.  The Family Court found that although Mother has proposed a visitation plan for Father, there is no plan for how to distribute the costs for the children's travel expenses.

The Family Court concluded that the educational needs of the children were adequately met in Hawaiʻi, and that there was limited information about the specific educational opportunities in Washington.  The Family Court concluded that although Z.K.T. has suffered from allergies that have not yet been definitively diagnosed, the issue appears to have been resolved, and it does not appear that Z.K.T. requires any extraordinary care or treatment.  The Family Court also noted the significant disruption that would occur in the children's relationship with their extended family if they were permitted to relocate, considering that only Mother's brother was currently in Washington and although Mother testified her parents intended to move, there was limited testimony about the details of such move. The Family Court also expressed concern that Mother's intention to move was motivated more by her desire to follow her partner to Washington as opposed to improve her children's lives.

At the July 11, 2019 hearing, the Family Court stated that it was granting Father's request for joint physical custody based on the same findings it had made in relation to its denial of Mother's relocation request.  The Family Court further noted that its custody determination was also based on considerations by the GAL, who expressed that the children have requested for equal time with Mother and Father, and appear to be happy with both parents.

In sum, the Family Court considered Mother's arguments in its evaluation of the HRS § 571-46(b) factors, and within its discretion concluded that it was in the children's best interests to remain in Hawaiʻi and for Father to be awarded joint physical custody of the children.  Although Mother challenges the Family Court's FOFs and COLs "to the extent they are germane to this appeal", she does not challenge any specific finding or conclusion, nor does she provide any basis as to why any finding was clearly erroneous.  Accordingly, the Family Court did not abuse its discretion in its 2019 Post-Decree Order.

### III.  The Family Court's Post-Decree Order was not contrary to Hawaii's case law

Mother contends that the Family Court misapplied Hawaii's case law in its 2019 Post-Decree Order.  Specifically, Mother asserts that the court erroneously applied Gillespie v. Gillespie, 40 Haw. 315 (Haw. Terr. 1953), Maeda v. Maeda, 8 Haw. App. 139, 794 P.2d 268 (1990), Tetreault v. Tetreault, 99 Hawaiʻi 352, 55 P.3d 845 (App. 2002) and Fisher, 111 Hawaiʻi 41, 137 P.3d 355 in denying Mother's request to relocate the children.  We disagree and conclude that the Family Court properly considered and applied Hawaiʻi case law in its 2019 Post-Decree Order.

Mother asserts that the instant case is distinguishable from Gillespie and Maeda, where the parents' requests to relocate their children were denied because the relocating parent did not provide evidence that the relocation destination was well-suited for their children.  See Gillespie, 40 Haw. at 320-23; Maeda, 8 Haw. App. at 143, 794 P.2d at 270.  Mother instead contends that this case is more akin to Fisher and Tetreault, where the record supported the court's determination that relocation was in the best interests of the children.  See Fisher, 111 Hawaiʻi at 50-51, 137 P.3d at 364-65; Tetreault, 99 Hawaiʻi at 358, 55 P.3d at 851.  However, as discussed above, the Family Court considered the evidence and ultimately concluded that there was not enough information about the relocation to determine whether the move would be beneficial to the children.  The record supports this conclusion.

9

While Mother testified that she received two informal job offers in Washington, her testimony on cross-examination indicated that the terms of her employment were speculative. Mother also testified that her partner did not currently have a job in Washington.  Mother also testified that she had not yet secured any long-term housing, and intended to move in with her brother until she was able to find a suitable home for the children.  However, as noted by the Family Court, there was no evidence regarding the details about her brother and his residence.

Further, Mother testified that the schools in Washington were ranked significantly higher than the schools in Hawaiʻi based on her research on "Google", but there was no testimony as to any specific school in which Mother intended to enroll the children, or how the new school would benefit the children.  The Family Court noted that the absence of such evidence was significant because it is undisputed that S.K.T. is thriving in her current school, and although K.K.T. and Z.K.T. have needed additional educational assistance, there was evidence presented that established that the children were receiving such assistance from their teachers and counselors in Hawaiʻi.

In sum, our review of the record confirms that the Family Court appropriately considered Hawaiʻi case law in denying Mother's request to relocate her children to Washington.

**IV.  The Family Court did not err in finding that there was no history of domestic abuse by Father**

Mother asserts that the Family Court erred in its Post-Decree Order because it found no history of abuse on the part of Father, and erroneously concluded that Father had rebutted the presumption in HRS § 571-46(a)(9) against an award of joint physical custody to a parent where there is a determination by the court that family violence had been committed by that parent. We disagree because the record does not contain a finding that Father committed family violence, and thus there was no rebuttable presumption against Father's joint physical custody of the children.

One of the factors in awarding child custody under HRS § 571-46(b) is "[a]ny history of sexual or physical abuse of a child by a parent".  As stated in HRS § 571-46(a)(9), if the family court makes any determination that family violence had been committed by a parent, a rebuttable presumption is raised against that parent's custody over the children in every proceeding determining custody:

> In every proceeding where there is at issue a dispute as to the custody of a child, a <u>determination by the court that family violence has been committed by a parent raises a rebuttable presumption that it is detrimental to the child and not in the best interest of the child to be placed in sole custody, joint legal custody, or joint physical custody with the perpetrator of family violence</u>. In addition to other factors that a court shall consider in a proceeding in which the custody of a child or visitation by a parent is at issue, and in which the court has made a finding of family violence by a parent:
> (A) The court shall consider as the primary factor the safety and well-being of the child and of the parent who is the victim of family violence;
> (B) The court shall consider the perpetrator's history of causing physical harm, bodily injury, or assault or causing reasonable fear of physical harm, bodily injury, or assault to another person; and
> (C) If a parent is absent or relocates because of an act of family violence by the other parent, the absence or relocation shall not be a factor that weighs against the parent in determining custody or visitation;

(Emphasis added).

HRS § 571-2 (2018) defines "family violence" as follows:

> "Family violence" means the occurrence of one or more of the following acts by a family or household member, but does not include acts of self-defense:
>
> (1) <u>Attempting to cause or causing physical harm to another family or household member</u>;
> (2) Placing a family or household member in fear of <u>physical harm</u>; or
> (3) Causing a family or household member to engage involuntarily in sexual activity by force, threat of force, or duress.

(Emphases added).

Here, in the 2019 Post-Decree Order, the Family Court concluded that the factor under HRS § 571-46(b)(1), "[a]ny history of sexual or physical abuse of a child by a parent", was

11

not applicable, presumably because there was no prior history of physical or sexual abuse by either parent.  However, the Family Court further concluded:

> With respect to the finding of the Court contained in its [2016 Post-Decree Order], that "there was domestic violence in the past," the Court finds and concludes [Father] has rebutted the presumption in [HRS §] 571-46(a)(9) against an award of joint legal and physical custody to [Father].

Mother asserts that this conclusion was erroneous because the Family Court had previously found that Father had committed domestic violence in the 2016 Post-Decree Order. Accordingly, Mother asserts that the Family Court failed to undertake any of the analysis required by HRS § 571-46(a)(9) & (10) before concluding that Father had rebutted the statutory presumption against his joint custody of the children.  However, the 2016 Post-Decree Order does not reflect a finding of family violence on the part of Father.

As stated in its FOFs in the 2016 Post-Decree Order, the Family Court found that "[t]here was domestic violence in the past."  However, the Family Court's FOFs did not indicate who had committed such conduct, or what such conduct entailed.  Further, this finding does not appear to implicate a finding of family violence on the part of Father.  As Mother asserts in her opening brief, the Family Court's finding of domestic violence appears to pertain to the following FOFs in the 2016 Post-Decree Order:

> 1.    The Court has concerns for that [sic] the minor children being exposed to violent video games and guns that are inappropriate for their age while in [Father's] care.
> 2.    The children are exhausted when returning from [Father's] house.  This was recognized by the teachers and counselors.
> 3.    The Court is concerned with the children's access to social media accounts which may place the children in danger, but [Mother] did not meet her burden in proving that the minor children's access to the Internet has placed them in danger.
> 4.    The parties' minor son was injured while in [Father's] care and did not notify [Mother] for two days, which is not in the best interests of the child, nor does it support [Father's] motion for 50-50 custody.

While these FOFs relate to concern over Father's ability to properly care for the children, it does not indicate that Father had committed any "family violence" as defined under HRS § 571-2.  To the contrary, the Family Court in the 2016 Post-Decree Order found that "[b]oth parties appear to be loving, caring parents."  Further, it is telling that while the Family Court did make a finding in the 2016 Post-Decree Order that "there was domestic violence in the past[,]" it did not undertake any analysis under HRS § 571-46(a)(9) to determine whether to amend Father's joint legal custody with the children, thus indicating that it did not find any family violence on the part of Father.

On appeal, Mother asserts that "[Father] continued a pattern of domestic violence after the divorce aimed at [Mother]."  Mother notes that she testified that she has been subjected to verbal abuse by Father, including at least one occasion where Father had berated her with insults.  Mother also asserts that she was subjected to Father's "controlling behavior and financial control, including refusing to pay much needed child support, which itself exacerbated [her] financial dilemma."  While the definition of "family violence" is not limited to physical acts of domestic violence, and may include non-physical acts such as threats, see HRS § 571-2; see also Tumaneng v. Tumaneng, 138 Hawaiʻi 468, 475, 382 P.3d 280, 287 (2016), it cannot be said that Mother's allegations rise to the level of "family violence".

In sum, the record is devoid of any finding of family violence on the part of Father in both the 2016 Post-Decree Order and 2019 Post-Decree Order.  Mother points to nothing in the record that would indicate that Father committed family violence as defined under HRS § 571-2.  Therefore, there was no rebuttable presumption against Father's joint custody of the three children, and the Family Court did not err in its 2019 Post-Decree Order for finding no history of abuse.  We further note that to the extent that the Family Court erred in concluding that Father

13

rebutted the presumption under HRS § 571-46(a)(9), such error was harmless in light of our conclusion.

### V.  The Family Court did not err in relying on the GAL's recommendation and testimony

Finally, Mother asserts that the Family Court erred in relying on the testimony and recommendation of the GAL because "it was premised on a faulty presumption that tainted the opinion."  Mother asserts that the GAL approached her assessment of this case under the erroneous belief that Mother would not relocate to Washington if the Family Court denied her motion to relocate the children, and that such assumption rendered the GAL's recommendation and testimony "less meaningful, if not invalid."  Mother also asserts that the GAL did not acknowledge the prior domestic violence as being one of the reasons why Mother intended to relocate.

We first note that in the 2019 Post-Decree Order, the Family Court explicitly found that "[i]t is unknown whether, if her motion is denied, [Mother] will stay in [Hawaiʻi] with the children or follow [her partner] to Washington."  Therefore, there is no indication that the Family Court's decision to deny Mother's motion was guided by an apparently erroneous belief by the GAL that Mother would not relocate to Washington in the event her motion was denied.

Further, while the GAL indicated that she was under the belief that Mother would stay in Hawaiʻi should Mother's motion be denied, her testimony provided ample support for her recommendation to deny Mother's request to relocate the children to Washington.  In her testimony, the GAL noted that S.K.T. and K.K.T. expressed their preference not to move to Washington, and that while Z.K.T. expressed that he would move if Mother moved, he also indicated that "if he didn't have to move he didn't want to move."  The GAL also noted that while K.K.T. had encountered some issues in school, all three children were prospering with their education and were receiving ample support from their teachers and counselors.  The GAL noted that the children were doing well in their current living conditions in Hawaiʻi, and

14

that the children were involved in a number of extracurricular activities that they would not be able to continue if relocated to Washington.  The GAL also noted that the children's school counselor expressed that it would be devastating for the children to leave Father considering his active role in their lives.  Finally, the GAL indicated that Mother had not communicated a specific plan to her for Mother's move and children's relocation to Washington.  Based on her testimony, the GAL provided ample evidence supporting her recommendation to deny Mother's request to relocate the children, even despite her apparently erroneous understanding that Mother would stay if her motion was denied.

As to Mother's second contention, while Mother testified that she attempted to discuss instances of prior domestic violence and verbal abuse with the GAL as one of the reasons why she intended to relocate, there was no evidence presented to the Family Court that this was one of the reasons Mother sought to relocate to Washington.  Indeed, Mother testified that the reasons she sought to relocate the children to Washington were to improve their living conditions with the cheaper costs of living, provide better educational opportunities and medical care, pursue employment opportunities, follow her partner, and to be with her parents who intended to move to Washington in the future.  Nowhere in Mother's testimony does she assert that the alleged domestic violence and verbal abuse was one of the reasons Mother sought to relocate to Washington.  Mother also did not indicate in her motion that she was relocating to Washington because of Father's alleged domestic violence.

Based on the foregoing, we conclude that the Family Court did not abuse its discretion in denying Mother's request to relocate the children to Washington, and in granting joint physical custody of the children to Father and Mother.

## VI.  Conclusion

The Family Court of the Third Circuit's "Order Re Plaintiff's Motion and Declaration for Post-Decree Relief filed on 06/21/2018 and Defendant's Motion for Post-Decree Relief to

Modify Physical Custody and Visitation Orders filed on 04/23/2019," entered on August 6, 2019, is affirmed.

DATED:  Honolulu, Hawaiʻi, July 31, 2020.

On the briefs:

Kai Lawrence,
(Rebecca A. Copeland on the
opening brief),
for Plaintiff-Appellant.

Daniel S. Peters,
for Defendant-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Derrick H.M. Chan
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge