VIRGINIA GILLESPIE *v.* EDWARD S. GILLESPIE.

NO. 2933.

ARGUED JUNE 10, 1953.                    DECIDED SEPTEMBER 10, 1953.

TOWSE, C. J., LE BARON AND STAINBACK, JJ.

OPINION OF THE COURT BY LE BARON, J.

This is an appeal by the father of two minor female children, presently aged nine and eleven years. The ap-

peal is from an order amending an amended decree of divorce between him and the mother of those children. The order primarily affects the joint custody of the children in both parents as originally decreed and reaffirmed on subsequent amendments. It was entered at the instance of a motion by the mother after a hearing upon an order to show cause. The motion, as well as the return, is based upon the prior record of the case in the circuit court and requires a brief history of the case as disclosed by that record.

The parties were married on August 4, 1937 in Honolulu. Their two children were born there and it constituted their matrimonial domicile until they were divorced on June 24, 1948. The decree of divorce awarded both parties "joint custody of their two minor children," who were then aged four and seven years, and expressly provided that "neither of the parties hereto shall take either or both of said children from the Territory of Hawaii without further order of this court or the approval of both parties hereto." The decree ordered the father to pay alimony to his former wife and support money for his children. Three years later on August 31, 1951, the mother filed a motion to amend the decree so as to award her sole custody of the children and to increase the amount originally ordered for their support. After the hearing upon an order to show cause relative thereto, the parties by stipulation affirmed that they "shall have joint custody of their two minor children" but allocated "the periods during which the joint custody of the children shall be shared by and between the parties." Such stipulated allocation of periods for sharing joint custody by both parties "appearing to be for the best interests of [the] children," it was adopted by the amended decree, entered on October 8, 1951, as an amend-

ment of the original decree of divorce which "in all other respects [remained] in full force and effect." One month later on November 3, 1951 the mother married a sergeant in the United States Army temporarily stationed in Hawaii. Within the same month the father moved to eliminate from the amended decree, and obtained an order of court eliminating therefrom, "all provision for the payment of alimony." The order provided, however, that "all other provisions of said Decree of Divorce as amended shall remain in full force and effect pending the further order of this court."

Upon that record the mother one year later on November 10, 1952 based her instant motion to have the father "show cause if any he has, why the decree of divorce entered * * * on June 24, 1948 should not be further amended" so as to (1) permit the mother to take the two minor children "from Hawaii to the mainland of the United States"; (2) award "the sole care and custody" of those children to the mother; (3) increase the original allowance for the children's support and maintenance; (4) require the father to pay "a reasonable attorney's fee" to the mother's attorney. The sole ground for that motion appears from the pleadings to be nothing more than that the mother, having married "a member of the armed forces of the United States [who] has received word for transfer from Honolulu to the mainland of the United States," must obtain court permission "in order for the [children] to accompany [her] and her husband to the mainland."

Upon the same record the father based his return. The return calls attention to the mother's prior motion of August 31, 1951 by which she sought to amend the decree in the same manner with respect to sole custody and an increase in support money but after a hearing thereon in

effect abandoned that attempt and by stipulation with the father affirmed joint custody with no increase in support money but with allocation of periods to share such custody. It points to the resultant amended decree of October 8, 1951, which, in adopting the stipulated allocation for sharing joint custody as an amendment, noted that it appears to be "for the best interests of said children." The return thereupon alleges *inter alia* that "no allegation in the affidavit filed with the present motion alleges any material change in circumstances since the date of the modification of the decree of October 8, 1951, and that therefore insufficient facts are alleged to form a basis for any order by this court amending the decree" as prayed.

Without passing upon the sufficiency of the motion as raised by the return, the trial judge presided at periodic hearings which commenced on December 9 and closed on December 23, 1952. At the hearing's close he orally found that "each parent, the father and mother, are fit custodians to take custody of the two little girls, but because of the fact that they are females, and because they are so young, the Court feels that and determines that the Court should grant permission for these two children to accompany their mother to the mainland." He continued by saying that the children "should spend at least July and August with their father in Hawaii," that their support money should be increased and that the father should pay the mother's attorney a fee in the sum of $350. To these oral findings the father excepted and gave notice in open court that an appeal would be taken from any order entered in accordance with them. But before such an order had been entered, the father himself on January 16, 1953 intervened and orally moved in the presence of the mother to reopen the case for the

purpose of proving a sudden change in his finances. For that limited purpose the case was reopened on that day. The father resumed the witness stand. He testified that since the close of the hearing his employment had terminated and that he was forced to seek new employment at a reduced salary. On that testimony, which the mother did not dispute, the trial judge orally found that there should be no increase in support money and in effect overruled his prior oral finding as to an increase.

Before entry of a final or appealable order and without court permission or the father's approval, the mother took both children from the Territory to the mainland of the United States for the purpose of establishing a permanent residence with her husband wherever he may be stationed. On discovery of this departure, the father moved for and obtained an order against the mother to show cause why she should not be held in contempt of court "for removing from the jurisdiction of this Court [the minor children of the parties] contrary to the provisions of the amended decree now effective [herein]." That order for contempt proceedings was returned unserved on January 23, 1953 and later orally dismissed on the motion of the mother's attorney. Thereafter on February 27, 1953 the instant order, now on appeal by the father, was entered in the continued absence of the mother and the children. That order amends the amended decree of divorce by permitting the mother to take the children from the Territory to the mainland of the United States and by awarding sole custody to her while she is on the mainland, with "the right of reasonable visitation to the [father]." It provides, however, "that during the summer months of July and August, the temporary care, custody and control * * * is awarded to [him] with the right of reasonable visitation to [her]." But it does

not allow an increase in support money. On the contrary, it suspends the payments thereof "during the summer months when [the father] shall have the children pursuant to the terms of this order." It finally requires the father to pay the mother's attorney a fee of $350 "for services up to and including December 24, 1952, and a further attorney's fee in the sum of $250 * * * for his services in the proceedings subsequent to December 24, 1952 and up to and including February 19, 1953." On the same day of entry, the father perfected his appeal therefrom to this court.

The specification of alleged errors challenges the order in permitting the children to be taken out of the Territory, in awarding sole custody to the mother on the mainland and in requiring the father to pay fees to the mother's attorney. It presents two questions of law. One is whether the trial judge on the record and the evidence was warranted in changing the custody of the children from a joint one in both parties within the Territory to the sole custody in the mother outside the Territory. The other is whether any statute authorized the trial judge's order in requiring the father to pay an attorney's fee where, as here, there admittedly is no stipulation or contract permitting it.

Pursuant to the general rule of custody that the welfare of the children has paramount consideration, this court consistently has given preference over the father in favor of the mother where her custody appears more beneficial to the child. (*Re Thompson Minor*, 32 Haw. 479; *Fernandes* v. *Fernandes*, 32 Haw. 608; *Robello* v. *Robello*, 33 Haw. 34; *Dela Cruz* v. *Dela Cruz*, 35 Haw. 95; *Jay* v. *Jay*, 37 Haw. 34; *Daitoku* v. *Daitoku*, 39 Haw. 276; *Yankoff* v. *Yankoff*, 40 Haw. 179.) That does not mean, however, that custody will not be awarded to the father

where his custody appears more beneficial than the mother's. (*Dascoscos* v. *Dascoscos,* 38 Haw. 265.) On the contrary, it means that the welfare of the child is preeminently the thing to be considered and is far superior to the claims of either parent whose personal wishes and desires must be made to yield if seemingly opposed to such welfare. To insure that welfare, the children of divorced parents on entry of the decree become wards of the court and will not be permitted to be removed from its protective jurisdiction unless their well-being and future welfare will be the better subserved thereby. Consistent therewith, courts in awarding custody ordinarily will prefer a resident parent over the other parent who is either a nonresident or a resident contemplating immediate removal from the jurisdiction where both parents are equally fit to have custody. (*State ex rel. Shoemaker* v. *Hall,* 257 S. W. 1047 [Mo. 1923]; *Conrad* v. *Conrad,* 296 S. W. 196 [Mo. App. 1927]; *Baer* v. *Baer,* 51 S. W. [2d] 873 [Mo. App. 1923]; *Harris* v. *Harris,* 20 S. E. 187, 115 N. C. 587; *Brake* v. *Brake,* 244 S. W. [2d] 786 [Mo. App. 1951]; *McGonigle* v. *McGonigle,* 151 P. [2d] 977, 112 Colo. 569; *Thompson* v. *Thompson,* 60 N. Y. S. [2d] 359.) Nevertheless, the welfare of the children continues to be paramount over the claims of either parent, be he or she the resident or nonresident. For a child to be in the custody of a resident, however, is a benefit in itself to the child as a ward of the court within its protective jurisdiction. When a child has been given that benefit by a decree of divorce, the party seeking to divest the child thereof by changing custody to a nonresident has the burden of proof to show that the change will be clearly for the best interests and future welfare of that child. (*Baer* v. *Baer, supra; Brake* v. *Brake, supra; Martinec* v. *Sharapata,* 328 Ill. App. 339, 66 N. E. [2d] 103.) In

this case the underlying question for determination is whether the mother sustained such a burden.

In approaching that question it is not without significance that the mother in her motion and supporting affidavit neither alleges nor avers that the change in custody and removal of the children from the Territory, as sought by her, would be for the best interests of the children. Nor did she make it appear at the hearing that those interests were uppermost in her mind as things pre-eminently to be achieved. On the contrary, she at the outset of the hearing took the position that the "only one real issue" was her fitness to have "joint or complete custody." Her primary concern apparently was with her own dilemma between filial and marital duties founded in the amended decree prohibiting her from removing the children from Hawaii and in the subsequent army order transferring her husband to the mainland. Consequently, she did not attempt to prove that the children would enjoy better or as good living conditions on the mainland as to their temporal, mental and moral welfare than they had been enjoying in Hawaii or would continue to enjoy here, if she left the Territory without them. She did not even prove where the children would be located other than that they would be with her and her husband wherever he may be stationed, and probably live in quarters assigned to him as a sergeant in the army at or near an army camp or fort somewhere in the western part of the United States. She did prove, however, that her new husband is a man of good character who has treated the children as though they were his own. But it was established by her testimony on cross examination that her husband is half her age and nearer in age to the younger child than he is to her.

In contrast to the mother's position, the father made

it clear early in the presentation of his case that "the whole point in this proceeding * * * is the welfare of these children." Upon that point he opposed her motion. He testified that he is ready and willing to continue as joint custodian or in her absence undertake the entire responsibility for the children's care, support, maintenance and control. The evidence is undisputed that he owns a suitable dwelling for such an undertaking, located in a good neighborhood in Honolulu, and is able to properly care for the children with the aid of a housekeeper or one of his several married sisters and sisters-in-law who reside within the city and with whom he can readily make the necessary arrangements.

It is no answer for the mother to say in support of her motion that she is a fit and proper custodian, for that is not in issue and the father himself is equally a fit and proper custodian as established by the original decree and on stipulation of the parties affirmed in the amended decree as well as abundantly proved at the hearing. Nor does the mere fact that the children are females of nine and eleven years constitute such a new fact or altered circumstance, accruing since the entry of the amended decree, as to warrant the granting of the mother's motion. The same may be said of the army order transferring the mother's young husband to the mainland and her desires to take the children with her and accompany and live with him wherever he may ultimately be stationed. This is particularly true where, as here, the record is barren of a sufficient basis on which to ascertain whether the change she contemplates will be beneficial or detrimental to the children. On that state of the record the benefits to the children must be considered which flow from being wards of the court within its protective jurisdiction and from being in their father's

custody where the surrounding circumstances are known to be good. In doing so, it is patent that the mother did not sustain her burden to prove, as she failed to plead, that the best interests of the children require the change in custody to a foreign jurisdiction as sought by her. Her motion therefore should have been dismissed or denied for insufficiency of pleading or proof. But she, as well as the father, may at any time petition a circuit judge to revise or alter the amended decree concerning custody for the best interests of the children, and that judge has the statutory authority to do so upon a proper motion and showing "as the circumstances of the parents and the benefit of the children may require." (R. L. H. 1945, § 12227.)

As to the last question to be considered, the trial judge clearly had no statutory authority to award the mother's attorney a fee to be paid by the father where, as here, "the motion [as to increase in support money] is made by the former wife [who did] not prevail, in which case she shall pay her own attorney's fee" within the clear mandate of the only applicable statute. (R. L. H., § 12226.) Both questions presented on appeal are answered in the negative.

Order appealed from reversed.

*F. D. Padgett* (*Robertson, Castle & Anthony* with him on the briefs) for appellant.

*J. E. Parks* (also on the brief) for appellee.