HARRIET W. ESTRELLA *v.* ERNEST R. ESTRELLA.

No. 4106.

ARGUED APRIL 9, 1959.                    DECIDED APRIL 16, 1959.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY STAINBACK, J.

Appellant Harriet W. Estrella, now Harriet W. Little, obtained a divorce from appellee Ernest R. Estrella on May 4, 1957. The decree awarded the libelant the care, custody and control of the two minor children, reserving to libelee reasonable rights of visita-

tion. There was a property settlement agreement between libelant and libelee in which it was agreed that the wife should make arrangements satisfactory to the husband with a nursery school or with independent parties so that the husband could pick up the children and take them out for visits on Saturdays or Sundays without the necessity of seeing the wife and her parents. In the property settlement it was further agreed that the children would not be removed from the Territory without the husband's consent. The divorce decree approved the property settlement.

On July 14, 1958, appellant filed a petition to amend the decree of divorce to permit her to remove the children from the jurisdiction. The petition set forth that since the entry of the divorce decree circumstances had materially changed in that on June 19, 1958, the petitioner remarried and is still married to Kenneth G. Little who is in Albany, California; that her husband is gainfully employed, has a home awaiting petitioner in Albany, California, where she and the minor children will reside; and that it would be in the best interests and welfare of the children if they continue to live with their mother and accompany the petitioner to Albany, California. On July 23, 1958, the libelee filed a cross petition to amend the decree so that the custody of the children be awarded to him. A return to the cross petition was filed by appellant in which she alleged the sole issue in the motion to amend the decree was the welfare of the minor children. The case duly came on for hearing.

The evidence showed that the two minor children were at the time of the hearing 5 and 3 years of age respectively; that the younger, Linda Louise, was partially paralyzed as the result of polio and was required to visit the doctor weekly and to have therapeutic treatments by her mother every night; that the children were living with their mother in their maternal grandparents' home; that the mother's new husband at the time of the hearing had obtained employment in San Francisco where he was employed as a salesman of optical equipment and was receiving a compensation of about $7,200 a year; that he desired to have the children in his home and was willing to assume financial responsibility towards the children; that he had leased a three-bedroom house in Albany near a park where there was a heated swimming pool which would be useful for Linda Louise's therapy; that the house was in a good residential

district and near a good school. Libelant originally planned to teach in California at the same school where the older girl would be registered. The children had numerous relatives in the nearby suburbs of San Francisco. Appellant testified that in her view the change to California was in the best interests of the children.

The evidence further showed that the father visited the children only once between the date of the decree of divorce and the filing of the petition to amend. He claimed that was because the mother had not carried out the provisions of the settlement agreement with respect to visitation at a neutral place.

At the close of the hearing the court denied the petition to amend the decree to permit the children to leave the Territory with their mother, and also denied the cross petition for change of custody of the children to the father. The court, in its oral ruling, stated: "The Gillespie case [*Gillespie* v. *Gillespie*, 40 Haw. 315] seems to the Court to provide *a rule of law* with which the Court might or might not completely agree but which is binding on the Court, and that is to grant the motion under these circumstances, *there is required a clear showing of what amounts to almost a necessity for the removal of the children.* That showing has not been made." (Emphasis added.)

Our statute relative to divorce provides in part:

> "The judge may from time to time afterwards, on the petition of either of the parties, revise and alter the decree concerning the children, and make a new decree concerning the same, as the circumstances of the parents and *the benefit of the children may require."* (R. L. H. 1955, § 324-38.) (Emphasis added.)

It is stated in *Fernandes* v. *Fernandes,* 32 Haw. 608, 609, "This court has long recognized the principle that the first and cardinal rule by which courts are governed in awarding the custody of children is the welfare of the children and not the technical legal right of either parent." This case holds that when the mother is a suitable person to have the care and custody of children of tender years, the best interests of a daughter 10 years of age and a son 8 years of age require that the custody of the persons should be awarded the mother even though the father and stepmother are of good character and otherwise without fault.

*Pauole* v. *Pauole,* 40 Haw. 312, decided approximately the same time ·(September 9, 1953) as the *Gillespie* case (September 10, 1953), held:

"A decree awarding the custody of children of divorced parents should be modified by the circuit judge when the circumstances of the parents are so changed that a modification would be for the good of the children."

Then:

"There is no general rule applicable to all such cases other than the one to the effect that *the welfare of the children is in all such cases of paramount consideration;* unless a mother is clearly unfit, the interests of children of tender years are usually best served by leaving them in the care of their natural mother." (Emphasis added.)

It is needless to cite all the decisions of this court, both before and after the *Gillespie* case, holding that the welfare of children is of paramount consideration in awarding or altering the custody of children. However, the most recent cases of *Neves* v. *Neves,* 41 Haw. 612 (decided March, 1957), and *Pacleb* v. *Pacleb,* 42 Haw. 300 (decided February, 1958), both hold that in awarding the custody of children in case of divorce, there is no general rule applicable to all cases other than the rule to the effect that the welfare of the children is of paramount consideration and that each case must be decided upon its own facts.

The decision of *Gillespie* v. *Gillespie* is not contrary to the court's numerous holdings as stated above. While the court did refuse in the *Gillespie* case to permit the mother of minor children (11 and 9 years of age, respectively) to take them to the mainland after her remarriage, and the opinion did contain some rather unnecessarily emphatic statements against permitting the removal of the children from the court's jurisdiction, it did not in any way attempt to overrule the well recognized rule "In determining divorced parents' claims to child's custody, child's welfare is paramount." (*Gillespie* v. *Gillespie, supra,* syllabus, p. 315.) In the *Gillespie* case there was *no allegation* and *no proof* that the best interests of the children would be served by their removal from the

Territory. On page 320 of that opinion the statement is made "Pursuant to the general rule of custody that *the welfare of the children has paramount consideration,* this court consistently has given preference over the father in favor of the mother where *her custody appears more beneficial to the child"* and again, on page 321, "It means that the welfare of the child is preeminently the thing to be considered and is far superior to the claims of either parent whose personal wishes and desires must be made to yield if seemingly opposed to such welfare." (Emphasis added.)

Thus, the *Gillespie* decision recognizes the general rule, not only of this court but of the courts elsewhere, that the welfare of the child is the pole star by which the court must be guided. For example, an annotation in 15 A. L. R. (2d) 432, 435, states:

> *"It is universally recognized by all courts* that in fixing the custody of a child *considerations of the welfare and interests of the child outweigh all other considerations;* and in choosing between a resident and a non-resident applicant, *the court's primary concern is the well-being of the child* and its physical, mental and moral development in an environment most adapted to and promotive of its full growth. All other considerations will be deferred or subordinated to the child's welfare, and *if the child's interests will be better promoted by awarding the custody to a nonresident, the court will not hesitate to do so* merely because of the nonresidence of the applicant. And, conversely, the custody of the child will not be awarded to a nonresident if the welfare of the child will not thereby be promoted." (Citing cases from 28 States.) (Emphasis added.)

This note also points out that nonresidence is not in itself a disqualification in awarding the custody of a child. As stated therein, on page 439, on the question of nonresidence as affecting one's rights to the custody of a child:

> "The overwhelming weight of authority is to the effect that a nonresident or one who intends to become a nonresident will not be deprived of the right to the custody of a child merely because of his nonresidence, and that if the interests of the child will thereby be promoted, custody of children will be awarded to nonresidents, the same as it would be to residents, or one in-

tending to become a nonresident will be permitted to remove the child to his or her new residence. It is so held whether the question arises upon the original award of custody or subsequently by way of modification of the decree so as to permit removal of the child by the person becoming a nonresident." (Citing cases from numerous States.)

In a number of these cases such permission to remove a child from the jurisdiction was granted despite the fact there were restrictions against removal in a custody agreement between the parties, and despite the fact that the visitorial rights of the resident parent would be adversely affected thereby, since the welfare of the child is the prime consideration, and visitorial rights must give way when in conflict with the child's welfare.

"The privilege of visitation of the parent is an important one, but it is not an absolute right, nor is it the paramount consideration." (*Martin* v. *Martin,* 178 P. [2d] 284, 286; see also note in 15 A. L. R. [2d] 432, *supra.*)

In the present case it appears the children are of tender years and, as this court has decided again and again, children of tender years should remain in the custody of the mother unless it clearly appears that she is unfit and the best interests of the childen would be served by placing them elsewhere. (*Pauole* v. *Pauole, supra.*) There is no claim made that the mother in this case is unfit. This court recognizes that California has a healthful climate, fine educational facilities, and that the surroundings appear in every way suitable to promote the best interests of these young children in their mother's home.

Obviously, by removal of the children from the Territory the visitation rights of the father will be exercised under difficulties and at great expense, but the privilege of visitation is subordinate to the rule that the general welfare of the children is paramount.

Reversed and remanded for further proceedings in accordance herewith.

*Frank D. Padgett* (*Robertson, Castle & Anthony* with him on the briefs) for appellant.

*Harriet Bouslog* (*Bouslog & Symonds* on the brief) for appellee.