137 P.3d 355

Marie Stella Martin FISHER, Petitioner–
Plaintiff–Appellant,

v.

David Thomas FISHER, Respondent–
Defendant–Appellee.

No. 26935.

Supreme Court of Hawai'i.

June 30, 2006.

Paul A. Tomar, Honolulu, and Jill M. Hasegawa (of Ashford & Wriston), on the writ, for petitioner-plaintiff-appellant.

R. Steven Geshell, Honolulu, on the response, for respondent-defendant-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, AND DUFFY, JJ.

Opinion of the Court by MOON, C.J.

On May 19, 2006, petitioner/plaintiff-appellant Marie Stella Martin Fisher (Mother) timely petitioned this court for a writ of certiorari to review the Intermediate Court of Appeals' (ICA) summary disposition order, filed on April 19, 2006. Therein, the ICA affirmed in part and vacated in part the Family Court of the First Circuit's [1] decree (divorce decree) entered on October 13, 2004, granting Mother a divorce from defendant-appellee David Thomas Fisher (Father) and determining custody arrangements for their three minor children. In her application for writ of certiorari, Mother, the primary parent, argues that the trial court erroneously permitted Father, the non-primary parent, to relocate with their minor children to Virginia, over her objection, which decision Mother apparently believes is contrary to Hawai'i precedent. Mother contends that Hawaii's standards for relocation cases are "too amorphous to provide meaningful guidance and predictability to prospective custody/relocation litigants and counsel" and urges this court to provide "much needed judicial guidelines, policies, and/or presumptions in the adjudication of relocation cases." We granted certiorari on May 30, 2006 to address Mother's contentions.

## I. BACKGROUND

### A. Factual Background

The following facts are taken from the Findings of Fact (FOFs) and Conclusions of Law (COLs) issued by the family court on March 8, 2005 and are generally uncontested, except where noted. The parties married on October 13, 1990 in Latah, Idaho and had three daughters during the marriage: (1) Sarah Elaine Fisher, born on June 18, 1992; (2) Lauren Dolores Fisher, born on November 12, 1995; and (3) Grace Kathryn Fisher, born on June 2, 1999. Father began military service in 1982 and served in the United States Navy throughout the marriage. As of the date the divorce proceedings were initiated, Father had completed 19.5 years of military service and had risen to the rank of Commander. Mother had completed two years of college prior to the marriage and did not work throughout the marriage. During the marriage and after the children were born, the family resided in four locations prior to moving to Hawai'i in June 2001. Because of his duties, Father was away from the family for several months at a time either on ship or at sea duty.

The family resided in Kailua, Oahu during their residence in Hawai'i, and the children attended St. Mark school in Kaneohe. After commencing divorce proceedings in September 2003, Mother applied for and was accepted into the Nursing Program at Hawai'i Pacific University (HPU) and began attending classes in June 2004 to complete some prerequisite courses.

In September 2004, Father was transferred to Washington, D.C., for a position with the Joint Chiefs of Staff at the Pentagon. Father wished to pursue his career in the military, as he is eligible for promotion to Captain in June 2006. Father bought a home in Virginia with the help of his parents, who sold their home in North Carolina in order to live with Father in Virginia. As of the date of trial (August 2004), Father's gross salary, including allowances, was $9,765.93 per month, while his expenses were $4,300. During the marriage, the parties accumulated substantial assets including life

---

1. Per diem Family Court Judge Gregg Young presided over the divorce proceedings.

insurance policies, savings, and investments. Additionally, upon the completion of twenty-six years of military service, Father will receive military benefits which he expects to consist of seventy-five percent of his base pay.

### B. *Proceedings*

On September 30, 2003, Mother filed a complaint for divorce against Father. Mother subsequently filed a Motion for Pre–Decree Relief, seeking, *inter alia,* an order: (1) maintaining the custodial status quo, with continued joint occupancy of the marital residence; (2) requiring Father to pay monthly family support; and (3) requiring Father to maintain various household payments and living expenses. On December 12, 2003, the parties entered into a Stipulated Order re Pre–Decree Relief [hereinafter, the Stipulation], which provided temporary custody as follows:

> The parties shall continue as joint legal custodians of the children. [Mother] shall be primarily responsible for the care of the children during each weekday day, and each Tuesday & Friday evenings, until bed time. [Father] shall be primarily responsible for the care for the children during Monday, Wednesday, & Thursday evenings. The parties shall each have a weekend day and evening each weekend, subject to their agreement. The foregoing is subject to change and reasonable flexibility, by agreement[.]

Pursuant to the Stipulation, the family court entered an order on December 12, 2003, appointing Marianita Lopez, Esq. as a Custody Evaluator. On March 1, 2004, Lopez filed her Custody Evaluator's Report to the family court. Therein, Lopez made several findings regarding the children, some of which were later adopted by the family court in its FOFs. Lopez determined that the three children were well-adjusted and performing excellently at St. Mark, with very high grades and excellent behavior reports. Lopez also found that Mother had been the primary caretaker of the children, but that Father had remained very involved with them and that the children were bonded to both parents. Lopez reported that both parents were competent, loving parents and that both were willing to live in or move to the location the court determined as being in the best interest of the children. Ultimately, Lopez found that (1) the children's futures could best be secured by Father's continuing to earn a living in the military; (2) Mother would be able to pursue her educational career goals in Virginia; and (3) living in Virginia would allow the children greater access to extended family.[2] Based on her findings, Lopez recommended that (1) the children be permitted to relocate to Virginia incident to Father's military reassignment to Washington, D.C. and (2) the parties be awarded joint legal and physical custody of the children.

### 1. Trial Proceedings

On August 9 and 10, 2004, trial was held before the Honorable Gregg Young. At the conclusion of trial, the family court judge rendered an oral decision on all disputed issues, including, *inter alia,*[3] custody and relocation. With regard to custody, the family court: (1) adopted the recommendations set forth in Lopez's report; (2) permitted Father to relocate to Virginia with the children; and (3) awarded joint legal and physical custody to the parties if Mother moved to Virginia as well, such that (a) Mother was to have the children on the first and third weekends of each month, from Wednesday after school until Monday morning (b) each parent was permitted to have a right of first refusal, under which one parent could watch the children during periods when the other parent was unable to watch the children.

On August 18, 2004, Mother moved for reconsideration of, *inter alia,* the family court's order regarding physical custody of the children. On September 3, 2004, at the conclusion of a hearing on the motion, the family court judge orally ruled that the time-

---

**2.** In her Opening Brief to the ICA, Mother contested FOF nos. 50–52, stating that they were unsupported by any credible evidence. However, the ICA rejected her contentions, as discussed *infra.*

**3.** The family court also ruled on the allocation of credit card debt, which Mother appealed to the ICA. Mother does not appeal the ICA's ruling on the debt allocation in her Application.

sharing schedule would be revised such that the parties would have the children for equal periods of time and that the right of first refusal would be amended. The family court also requested that Father draft the divorce decree to include the family court's oral rulings and modifications of the Stipulation. On October 1, 2004, Mother objected to several portions of the proposed divorce decree tendered by Father, pursuant to Hawai'i Family Court Rules (HFCR) Rule 58 (2004).[4] The family court denied all of Mother's objections and approved Father's proposed divorce decree in its entirety on October 13, 2004. Mother filed a timely notice of appeal on November 5, 2004. At Mother's request, the family court issued written FOFs and COLs pursuant to HFCR Rule 52(a) (2004)[5] on March 8, 2005. Therein, the family court made the following relevant findings:

53[.] Among witnesses called upon by the parties to testify at trial, penultimate testimonial evidence presented by Mother's sister Dr. Sarah Lawrence, M.D. ("Lawrence") and Pastor Mark Alan Bowditch ("Bowditch") formed decisive impressions on the Court buttressing Father's custodianship of the children.

54[.] Lawrence, a practicing physician in Moscow, Idaho, testified that she and Mother were roommates in college when Mother first met and dated Father.

55[.] While growing up together as sisters, Lawrence testified that she and Mother had a very close relationship until approximately two years ago when the relationship became "strained."

56[.] Lawrence observed Mother's level of anger more often became inappropriate at seemingly meaningless irritations.

57[.] In the last two years Mother appeared defensive and hostile to her parents and in-laws.

58[.] Mother seemed to focus her lifestyle primarily upon personal fitness and triathlon training.

59[.] Mother's priorities changed; according to Lawrence, Mother's attitude towards children during the last two years is best expressed, "let someone else take care of them, I've done my part."

60[.] Trial witness Bowditch, was a 6th grade teacher at St. Mark's [sic] school where the parties's [sic] two eldest daughters, Sarah and Lauren, attended school at the time of trial and was a reserve chaplin in the U.S. Air Force, having attended four years of divinity school.

61[.] Sarah and Bowditch's daughter were best friends and had many sleep overs at each other's home.

62[.] Bowditch had known both parties, equally well throughout 12 year old Sara and 8 year old Lauren's attendance at St. Mark's [sic].

63[.] As a USAF chaplain, a large part of Bowditch's work was devoted to marriage counselling [sic] and child custody and care.

64[.] While he did not find any fault in his observations of Mother's child care, Bowditch pointed out an unusual child care attribute.

65[.] From the first day Sarah started at St. Mark's [sic] to the present, Father has never failed, when transporting the girls to school, to park his car to personally walk Sarah and Lauren to class and greet their teachers every day while not on active duty outside Hawai'i.

---

4. HFCR Rule 58 provides in pertinent part:
 Within 10 days after entry or announcement of the decision of the court, the prevailing party, unless otherwise ordered by the court, shall prepare a judgment or order in accordance with the decision and secure thereon the approval as to form of the opposing counsel.... Any party objecting to a proposed judgment or order shall, within 5 days after receipt, serve upon all parties and deliver to the court that party's proposed judgment or order, and in such event, the court shall proceed to settle the judgment or order.

5. HFCR Rule 52(a) provides in pertinent part:
 [U]pon notice of appeal filed with the court, the [family] court shall enter its findings of fact and conclusions of law where none have been entered.... Findings of fact if entered shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

66[.] At the same time, Father[ ] not only volunteered to chaperon [sic] Sarah and Lauren's field trips, he chaperoned all the other students' field trips his active duty schedule permitted.[6]

. . . .

The family court concluded that, with regard to custody:

1[.] It is in the best interests of the minor children that joint legal and physical custody be awarded to Mother and Father, with equal time with both parents, with tie-breaking authority to Father.

2[.] It is in the best interests of the minor children to relocate to Virginia.

## 2. Appellate Proceedings

On appeal to the ICA, Mother argued that the unique facts of the instant case provide the court with an excellent opportunity to make important policy determinations affecting relocation cases because this is the first reported appellate case reviewing an order by the family court allowing a relocation by the non-primary parent, where the primary parent was found to be competent and fit and where the children were thriving in Hawai'i. Specifically, Mother alleged that the trial court erred in: (1) failing to place a priority and preference upon the continuity of the children's primary care by Mother, as required by case law and policy; (2) failing to place a priority and preference upon maintaining the stability of the children's residential and educational arrangements, as required by case law and policy; (3) failing to place a priority and preference upon the avoidance of parental conflict and by disregarding the clear risk that the children would be exposed to strongly negative views by Father and his parents against Mother when the judge conditioned the award of joint legal and physical custody upon Mother's moving to Virginia; (4) placing undue priority and preference upon economic factors; (5) discriminating in favor of Father's career goals over Mother's; (6) finding that living in Vir-

ginia would allow the children greater access to extended family; (7) characterizing Father's residence in Virginia as "the children's primary residence"; (8) concluding that it was in the best interests of the children to relocate to Virginia; and (9) awarding "tie-breaking authority to Father," when the divorce decree stated that "all decisions which materially affect the health, education and general welfare of the minor children ... shall be made jointly by the parties."

On August 22, 2005, Father moved to dismiss Mother's appeal on the basis that the relocation issue on appeal was moot because Mother had since moved to Virginia and was exercising her custodial and visitation rights. Mother opposed Father's motion to dismiss and moved to strike his attached declaration on the basis that he improperly attempted to introduce facts not presented to the family court. On February 10, 2006, Mother filed a motion for an order to expedite consideration of the appeal. On March 10, 2006, the ICA issued a receipt of Mother's motion to expedite and stated that it would take action as soon as it was reasonably possible. The ICA subsequently denied Father's motion to dismiss the appeal and granted Mother's motion to strike Father's declaration in separate orders entered on April 10, 2006.

As previously mentioned, the ICA issued its summary disposition order on April 19, 2006, wherein it stated that:

After a painstaking review of the record and the briefs submitted by the parties, and giving careful consideration to the arguments advanced and the issues raised by the parties, we resolve Mother's points of error on appeal as follows:

1. In finding that relocation to Virginia was in the best interests of the minor children, the family court did not clearly err, *Maeda v. Maeda*, 8 Haw.App. 139, 143, 794 P.2d 268, 270 (1990), because there was substantial evidence to support that finding. *In re Doe*, 95 Hawai'i 183, 190, 20 P.3d 616, 623 (2001); *Tetreault v.*

---

**6.** The family court also entered FOF no. 67, which stated that "[f]rom his observations and contact with the family over the years, Bowditch testified the girls' welfare and care would be better served by having the girls and Father relocated to Virginia." Mother contested the finding and the ICA concluded that the finding was erroneous because the family court struck that testimony during trial and there was thus no substantial evidence to support that finding.

*Tetreault,* 99 Hawai'i 352, 356–58, 55 P.3d 845, 849–51 (App.2002). Cf. *Maeda,* 8 Haw.App. at 144, 794 P.2d at 270.

. . . .

4. The family court erred in appending to its conclusion of law A.1 the ultimate clause—"with tie-breaking authority to Father"—because the family court thus derogated the award of joint legal custody contained in the divorce decree, and apparently did so without motion, notice or opportunity to be heard.

5. The family court erred in paragraph 4 of the divorce decree by referring to Father's residence in Virginia as the children's "primary" residence, because the decree awarded the parties joint physical custody.

Therefore,

IT IS HEREBY ORDERED that ... the ultimate clause of conclusion of law A.1, contained in the family court's March 8, 2005 findings of fact and conclusions of law, [is] vacated. The word "primary" is stricken from paragraph 4 of the family court's October 13, 2004 divorce decree, but the divorce decree is otherwise affirmed.

As previously mentioned, Mother filed her timely application for writ of certiorari, which we granted on May 30, 2006. In her application, Mother apparently believes that the ICA's upholding of the family court's divorce decree permitting relocation by Father with the children is contrary to early Hawai'i case law and that a recent ICA decision has left parents contesting relocation issues with no guidance or standards to follow. Because of the gravity of Mother's allegations, we granted certiorari to address Mother's contentions.

## II. *STANDARDS OF REVIEW*

### A. *Family Court Decisions*

 Generally, the family court possesses wide discretion in making its decisions and those decision will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

*In re Doe,* 95 Hawai'i 183, 189–90, 20 P.3d 616, 622–23 (2001) (internal quotation marks, citations, brackets, and ellipsis points omitted).

### B. *Family Court's Findings of Fact and Conclusions of Law*

 The family court's FOFs are reviewed on appeal under the "clearly erroneous" standard. A FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.

On the other hand, the family court's COLs are reviewed on appeal *de novo,* under the right/wrong standard. COLs, consequently, are "not binding upon an appellate court and are freely reviewable for their correctness.

. . . .

Moreover, the family court is given much leeway in its examination of the reports concerning a child's care, custody, and welfare, and its conclusions in this regard, if supported by the record and not clearly erroneous, must stand on appeal.

*Id.* at 190, 20 P.3d at 623 (citations, some internal quotation marks, brackets, and ellipsis points omitted).

### C. *Credibility of Witnesses*

 "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." *Id.* (ellipsis points, brackets, internal quotation marks, and citations omitted).

### III. *DISCUSSION*

 Mother contends that the criteria and standards for relocation cases in Hawai'i, including "best interests [of the child]" and "totality of circumstances" are "too amorphous to provide meaningful guidance and predictability to prospective custody/relocation litigants and counsel." Specifically, Mother contends that the leading case on the subject "merely sets forth a review of the varying approaches to adjudicating relocation cases, *without providing any guidance as to which approach is to be used in Hawai'i.*" Mother urges this court to "join the enormous body of cases from around the country which expressly state a preference and priority upon the continuity of care by the primary caretaker and stability in residential and educational arrangements as the paramount considerations in relocation cases" and states that "[e]arly Hawai'i case law provides the seeds for a definitive ruling." Mother apparently believes that the family court's order permitting relocation by a non-primary parent is inconsistent with Hawai'i case law.

HRS § 571–46 (Supp.2004), entitled "Criteria and procedure in awarding custody and visitation," provides in pertinent part:

In the actions for divorce, . . . or any other proceeding where there is at issue a dispute as to the custody of a minor child, the court, during the pendency of the action, at the final hearing, or any time during the minority of the child, may make an order for the custody of the minor child as may seem necessary or proper. In awarding the custody, the court shall be guided by the following standards, considerations, and procedures:

(1) *Custody should be awarded to either parent or to both parents according to the best interests of the child;*

. . . .

(4) Whenever good cause appears therefor, the court may require an investigation and report concerning the care, welfare, and custody of any minor child of the parties. When so directed by the court, investigators or professional personnel attached to or assisting the court shall make investigations and reports which shall be made available to all interested parties and counsel before hearing, and the reports may be received in evidence if no objection is made and, if objection is made, may be received in evidence; provided the person or persons responsible for the report are available for cross-examination as to any matter that has been investigated;

(5) The court may hear the testimony of any person or expert, produced by any party or upon the court's own motion, whose skill, insight, knowledge, or experience is such that the person's or expert's testimony is relevant to a just and reasonable determination of what is for the best physical, mental, moral, and spiritual well-being of the child whose custody is at issue[.]

(Emphasis added.) Under HRS § 571–46, the sole issue in a custody determination is the child's best interests, which is an issue of ultimate fact. *Maeda v. Maeda,* 8 Haw.App. 139, 143, 794 P.2d 268, 270 (1990) (citing *In re Jane Doe,* 7 Haw.App. 547, 558, 784 P.2d 873, 875 (1989) (stating that "in the child's best interest . . . is an ultimate finding of fact which must be adequately supported by preliminary findings of fact")).

In *Tetreault v. Tetreault,* 99 Hawai'i 352, 55 P.3d 845 (App.), *cert. denied,* 99 Hawai'i 352, 55 P.3d 845 (2002), a mother sought to relocate with her children to another state over the father's objection that (1) he was equally fit to have custody and (2) there was "no showing that the children's well-being would be better served by such a move." *Id.* at 356, 55 P.3d at 850. The ICA rejected the father's contentions, and, in an extensive footnote supporting its decision, the ICA reviewed two Hawai'i cases on point, including *Gillespie v. Gillespie,* 40 Haw. 315 (1953), and *Maeda,* and provided examples of case law from other jurisdictions.

In *Gillespie,* decided by the Supreme Court of the Territory of Hawai'i, the father of two minor female children appealed from an order amending a divorce decree which, *inter alia,* permitted the mother of the two children to take them "from Hawai'i to the mainland of the United States." 40 Haw. at

317. The mother of the children had remarried and her new husband, who was a member of the United States' military, had received word that he would be transferred to the continental United States. The trial court found that, although both parents were fit custodians, it was in the children's best interests to be with their mother and permitted the mother to relocate with the children. *Id.* Before the trial court issued a final order, the mother relocated with the children, and the trial court entered an amended decree permitting the mother to take the children and awarding her sole custody. *Id.* at 318. According to the territorial supreme court, the mother provided no reason why it should amend the decree to permit relocation, other than her husband's transfer. *Id.* The appellate court stated that:

> Pursuant to the general rule of custody that the welfare of the children has paramount consideration, this court consistently has given preference over the father in favor of the mother where her custody appears more beneficial to the child. That does not mean, however, that custody will not be awarded to the father where his custody appears more beneficial than the mother's. On the contrary, it means that *the welfare of the child is pre-eminently the thing to be considered and is far superior to the claims of either parent whose personal wishes and desires must be made to yield if seemingly opposed to such welfare.* To insure that welfare, *the children of divorced parents on entry of the decree become wards of the court and will not be permitted to be removed from its protective jurisdiction unless their well-being and future welfare will be the better subserved thereby.* Consistent therewith, courts in awarding custody ordinarily will prefer a resident parent over the other parent who is either a nonresident or a resident contemplating immediate removal from the jurisdiction where both parents are equally fit to have custody. *Nevertheless, the welfare of the children continues to be paramount over the claims of either parent, be he or she the resident or nonresident.* For a child to be in the custody of a resident, however, is a benefit in itself to the child as a ward of the court within its protective jurisdiction.

*Id.* at 320–21 (emphases added) (citations omitted). The court then reversed the order, allowing relocation on the basis that the "record [was] barren of a sufficient basis on which to ascertain whether the change [the mother] contemplates will be beneficial or detrimental to the children." *Id.* at 323.

In a subsequent case, *Estrella v. Estrella,* 43 Haw. 210, 1959 WL 11640 (1959), the territorial supreme court clarified its holding in *Gillespie,* stating that such holding was consistent with its holdings in earlier cases that followed no other general rule than "the rule to the effect that the welfare of the children is of paramount consideration and that each case must be decided upon its own facts." *Id.* at 213. The court further stated that,

> [w]hile the court did refuse in the *Gillespie* case to permit the mother of minor children ... to take them to the mainland after her remarriage, and the opinion did contain some rather unnecessarily emphatic statements against permitting the removal of the children from the court's jurisdiction, it did not in any way attempt to overrule the well recognized rule [that] "[i]n determining divorced parents' claim to child's custody, child's welfare is paramount." [*Gillespie,* 40 Haw. at 315.] In the *Gillespie* case there was **no allegation** and **no proof** that the best interests of the children would be served by their removal from the Territory.

*Id.* at 213–14 (emphases in original).

More recently, in *Maeda,* the ICA addressed the issue of relocation for a mother who sought to move with her boyfriend and son from Hilo, Hawai'i to California or Florida because of better employment opportunities and a more feasible economic standard of living. 8 Haw.App. at 140–41, 794 P.2d at 269. The family court order awarded sole legal and physical custody to the mother, but provided that, if the mother decided to move to the mainland, the father would be awarded sole custody. *Id.* at 142, 794 P.2d at 269–70. The ICA upheld the order, holding, *sua sponte,* that

HRS § 571–46 gives the family court the power, where warranted by the facts, to award sole legal and physical custody of a child to his mother subject to the condition subsequent that the award of his custody to his mother will be automatically terminated and awarded to his father one week prior to the time when his mother effectuates her plans to move with the child to a new residence out of the family court's jurisdiction.

*Id.* at 143, 794 P.2d at 270. The ICA explained that:

> Mother has a right to Son's legal and physical custody only when it is in Son's best interests. Here, the family court's decision is not based on Mother's planned move from Hawai'i to somewhere in California or Florida. It is based on the lack of any relevant evidence to determine the effects Mother's move with Son will have on Son. Mother is free to move. If she moves, however, her existing legal right to Son's physical custody is automatically terminated and awarded to Father *until she proves in court, as a matter of fact, that it will be in Son's best interests to move with her.*
>
> In the usual case, if it is in a child's best interests to be in the mother's sole legal and physical custody, that will be true no matter where the mother chooses to live with her child. *See Estrella v. Estrella,* 43 Haw. 210 (1959). In this case, however, the evidence forced the family court to choose between a situation and circumstances in Hawai'i that are known to be beneficial to Son, even if Mother is elsewhere, and an unknown situation and circumstances in California or Florida.
>
> As noted above, the family court's ultimate finding of fact, that it would be in Son's best interests to remain with Father in Hilo if Mother leaves Hawai'i, is not clearly erroneous.

*Id.* at 144, 794 P.2d at 270 (emphases added).

In *Tetreault,* the ICA further noted that:

> Across the country, the law applicable to interstate relocation of a child by a parent is diverse. For example, in Michigan,
>
> "a judgment or order awarding custody of a minor must provide that (1) the domicile or residence of a minor may not be moved from Michigan without the approval of the judge. . . ." Michigan further requires that a moving party prove, by a preponderance of the evidence, that removal is warranted. A trial court must analyze . . . four factors[.]
>
> As noted in [a later case], those four . . . factors are:
>
> (1) whether the prospective move has the capacity to improve the quality of life for both the custodial parent and the child; (2) whether the move is inspired by the custodial parent's desire to defeat or frustrate visitation by the noncustodial parent and whether the custodial parent is likely to comply with the substitute visitation orders where he or she is no longer subject to the jurisdiction of the courts of this state; (3) the extent to which the noncustodial parent, in resisting the move, is motivated by the desire to secure a financial advantage in respect of a continuing support obligation; and (4) the degree to which the court is satisfied that there will be a realistic opportunity for visitation in lieu of the weekly pattern which can provide an adequate basis for preserving and fostering the parental relationship with the noncustodial parent if removal is allowed.
>
> In Missouri, a statute mandates that
>
> "[a] person entitled to the custody of a child shall not change the residence of the child to another state or remove the child from this state for a period of time exceeding ninety days except upon order of the court or with the written consent of the parties with custody or visitation rights. . . ." In determining whether to grant the custodial parent's motion, *the paramount concern is the best interests of the child.*
>
> In New York, *all relevant facts are considered, with predominant emphasis placed on what outcome is most likely to serve the best interests of the child.*
>
> In Minnesota, where the custodial parent seeks to permanently move the children to another state over the non-custodial parent's objection, an evidentiary hearing is not required absent a prima facie case of endangerment or that the move was intended to deprive the noncustodial parent of visitation.

In California ... the custodial parent has a presumptive right to relocate with the minor child, subject to the power of the court to restrain a change that would prejudice the rights or welfare of the child.

*Tetreault*, 99 Hawai'i at 357 n. 8, 55 P.3d at 850 n. 8 (citations and brackets in original omitted). The ICA also noted that some courts recognize that restrictions on the domicile of an individual potentially violate parents' rights to certain individual freedoms, including travel. *Id.* at 358 n. 8, 55 P.3d at 851 n. 8. In addition, contrary to Mother's contention that *Tetreault* merely provided a review of various criteria without providing guidance, the ICA expressly adhered to the best interest standard applied in *Maeda*. Specifically, the ICA rejected the father's contention that there was no evidence to support the family court's finding that relocation was in the best interests of the children, and referred to the family court's findings that: (1) the mother was the primary caregiver; (2) it was in the children's best interests to award full custody to the mother; (3) the city the mother wished to move to had excellent schools, good job opportunities, and was a "low-crime, family-friendly, unpolluted environment." *Id.* at 358, 55 P.3d at 851. On that basis, the ICA affirmed the award of custody to the mother.

In sum, Hawai'i courts have consistently adhered to the best interests of the child standard as paramount when considering the issue of custody. In so doing, the family court is granted broad discretion to weigh the various factors involved, with no single factor being given presumptive paramount weight, in determining whether the standard has been met.

▆▆▆ In the instant case, neither parent presently contests the other parent's fitness,[7] and, although Mother is considered the "primary caretaker," Father has also been substantially involved in the children's lives and is willing and ready to accept full custody of the children. In addition, as Mother stated in her Opening Brief,

[b]oth the home the children have known for years and the proposed relocation would provide good opportunities for the children. The two locations are in nice family-friendly neighborhoods, have excellent schools, and provide nurturing places to raise the children.

The one major difference is that mother, the primary caretaker wishes to remain in Hawai'i, in the home that the children have called home for many years.

Thus, the only question before this court is whether there is substantial evidence to support the trial court's determination that relocation was in the best interests of the children and that such ruling does not conflict with prior case law.

Here, unlike *Gillespie* or *Maeda*, the record is not barren of facts regarding the relocation and the opportunities it holds for the children. On the contrary, the record indicates, as Mother expressly admits, that the new location is comparable in living conditions for the children, and, moreover, Mother stated that she was willing to move with the children, if relocation was permitted. Also, the family court stated that the testimonial evidence presented by Mother's sister, Sarah Lawrence, and Pastor Mark Alan Bowditch "formed decisive impressions on the [c]ourt buttressing Father's custodianship of the children." Dr. Lawrence and Pastor Bowditch testified, *inter alia*, as to Father's excellent relationship with his children and involvement in their everyday lives. Even though the custody evaluator, Lopez, expressed some concern at trial that the conflict between the parents had not dissipated as she had hoped since her recommendation for relocation, Lopez nevertheless continued to express her belief that (1) Father was an excellent parent, (2) he would encourage contact with the children's extended family, (3) Father and Mother had always planned to leave Hawai'i eventually, but that, if the family relocated again, Mother should then be granted custody. Inasmuch as the family court accorded weight to certain witnesses over others and those witnesses provided evidence that the relocation would benefit the children, the ICA did not err in upholding the family court's findings and conclusions regarding the best interests of

---

7. Previously, Father raised issues regarding Mother's mental fitness. However, by the time of trial, Father stated that he no longer believed she was mentally ill.

the children. *See In re Doe*, 95 Hawai'i at 197, 20 P.3d at 630 (recognizing that "it is not the province of the appellate court to reassess the credibility of the witnesses or the weight of the evidence, as determined by the family court"); HFCR Rule 52(a), *supra.* Moreover, the ICA's holding is consistent with its decision in *Maeda* and its subsequent decision in *Tetreault.* In the two cases in which a relocating parent was denied custody of a minor child, *i.e., Gillespie* and *Maeda,* the relocating parent did not provide the court with evidence that the relocation destination was well-suited for their children and, in fact, neither mother knew where they would be moving at the time custody was determined. In contrast, the ICA, in *Tetreault,* affirmed the family court's award of custody to the relocating parent based upon the uncontested findings and conclusions that mother's proposed relocation would be to a place with excellent schools, good employment opportunities, and a suitable environment. The instant case involves similar facts. Consequently, although Mother contends that Hawaii's standards are "too amorphous" to apply and that her status as the primary caretaker of the children should be given preference, the record indicates that the family court had substantial evidence upon which it based its determination that relocation was in the best interests of the children. Because the family court's determination is entitled to deference, *In re Doe,* 95 Hawai'i at 190, 20 P.3d at 623, we see no reason to disturb the October 13, 2004 decree. Nor do we see any reason to expressly establish, as Mother urges, "a preference and priority upon the continuity of care by the primary caretaker and stability in residential and educational arrangements as the paramount considerations in relocation cases." Accordingly, we hold that the ICA did not err in upholding the family court's custody award.

## IV. *CONCLUSION*

Based on the foregoing, we affirm the ICA's April 19, 2006 summary disposition order.

