**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000619
05-APR-2021
07:50 AM
Dkt. 38 SO**

NO. CAAP-20-0000619


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


IN THE INTEREST OF BK


APPEAL FROM THE FAMILY COURT OF THE FIRST CIRCUIT
(FC-S NO. 18-00290)


**SUMMARY DISPOSITION ORDER**
(By: Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

Appellant RC (**Mother**) appeals from the **"Order Terminating Parental Rights"** entered by the Family Court of the First Circuit[1] on September 17, 2020. For the reasons explained below, we affirm.

Mother does not challenge the following facts found by the family court: BK (**Child**) was born in 2016. Mother is Child's mother. Child suffers from Fetal Alcohol Spectrum Disorder, which was caused by Mother's alcohol use during pregnancy.

In December 2017, the State of Hawaiʻi Department of Human Services (**DHS**) took Child into protective custody after Mother, with Child nearby, was found unresponsive at a park near their home. Mother was taken to a medical facility, where Mother tested positive for marijuana and had a blood alcohol content of .22. Mother entered into a voluntary foster custody agreement with DHS, as part of which she agreed to participate in various programs. Child was returned to Mother's care in January 2018.

---

[1] The Honorable Andrew T. Park presided.

In March 2018, DHS again took Child into protective custody after Mother left Child with a stranger at a beach park, and Child suffered injuries.  Mother was not coherent when she returned to the beach park, and was involuntarily hospitalized.  Mother entered into another voluntary foster custody agreement, and Child was again returned to Mother.  In August 2018, Mother completed the residential portion of a substance abuse treatment program and moved with Child to a clean and sober home.

In November 2018, HPD investigated a report of a woman with a child screaming incoherently in the street.  Responding officers observed Mother lying on the sidewalk; she did not appear to be breathing.  Child — at the time about two years and six months old — was found wandering nearby, wearing only a shirt.  Mother was transported to Queen's Medical Center.  Child was transported to Kapiʻolani Medical Center for Women and Children.

On November 14, 2018, DHS filed a petition for temporary foster custody over child.  Mother stipulated to foster custody of Child and to a DHS service plan.  On January 7, 2019, the family court entered "Orders Concerning Child Protective Act."  Child's date of entry into foster care was January 7, 2019.  A further hearing was set for April 1, 2019.

Mother failed to appear at the April 1, 2019 hearing.  The family court entered "Orders Concerning Child Protective Act" on April 10, 2019.  A further hearing was set for June 26, 2019.  Mother appeared for the June 26, 2019 hearing, and at further hearings on December 11, 2019, and February 6, 2020.

On June 17, 2020, DHS filed a motion to terminate Mother's parental rights.  Mother requested a trial.  A trial was held on August 6, 2020.[2]  The family court entered the Order Terminating Parental Rights on September 17, 2020 (Mother's parental rights to five older children had been terminated in 1997, 2006, 2012, and 2013).  This appeal followed.

---

[2]     The Honorable Paul T. Murakami presided.

> [T]he family court possesses wide discretion in making its decisions and those decision[s] will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) (citation omitted).

Hawaii Revised Statutes (**HRS**) § 587A-33 (2018) governs termination of parental rights. The statute provides, in relevant part:

> **§ 587A-33  Termination of parental rights hearing.**
> (a) At a termination of parental rights hearing, the court shall determine whether there exists clear and convincing evidence that:
>
> (1)  A child's parent whose rights are subject to termination is not presently willing and able to provide the parent's child with a safe family home, even with the assistance of a service plan;
>
> (2)  It is not reasonably foreseeable that the child's parent whose rights are subject to termination will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care[.]

Mother challenges the family court's findings of fact (**FOF**) nos. 41, 42, 44, 58, and 59, and paragraph B of the Order Terminating Parental Rights. The family court's findings of fact are reviewed under the "clearly erroneous" standard. Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360. A finding of fact is clearly erroneous when the record lacks substantial evidence to support the finding, or despite substantial evidence in support of the finding, we are nonetheless left with a definite and firm conviction that a mistake has been made. Id. "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion. Id. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of

witnesses and the weight of evidence; this is the province of the trier of fact." Id. (citation omitted).

The family court found:

> 41.     During this case, Mother did not participate in a substance abuse assessment, random urinalysis, psychological evaluation/mental health assessment, Alcoholics Anonymous/Narcotics Anonymous Meetings, parenting education and outreach, [or] hands-on parenting, and sporadically cooperated with the DHS and work in partnership with the DHS, which typically coincided with her incarceration.

Mother contends FOF 41 is clearly erroneous because she "testified at trial that she had done an assessment with Arielle with Women's Way and she participated in Parenting Classes being offered by Oahu Community Correctional Center." But Mother admitted she did not give the Women's Way substance abuse assessment to DHS. DHS social worker Corinne Ready testified that after speaking with Arielle, she (Ready) was not sure a substance abuse assessment was actually performed. The Family Court found Ready to be a credible witness. Mother testified she participated in a six-week parenting class for three weeks. Ready testified that the parenting class actually lasted 12 weeks. FOF 41 is supported by substantial evidence and is not clearly erroneous.

The family court found:

> 42.     At the time of the August 6, 2020 trial, Mother was incarcerated at Oahu Community Correctional Center (OCCC) and was serving out the remainder of her 180 day incarceration for a probation violation that was scheduled to end in approximately November 2020.

Mother does not deny being incarcerated for probation violation, but contends that FOF 42 is clearly erroneous. Mother testified she was eligible to be released earlier than her scheduled November 2020 release, if she were to be admitted into a residential drug treatment program approved by her probation officer. At the time of trial, Mother testified she filled out residential drug treatment program applications and was "waiting for my [probation officer] to approve it." FOF 42 is supported by substantial evidence and is not clearly erroneous.

The family court found:

> 44. Mother's substance abuse problem is so pervasive that neither the consequences of incarceration nor the termination of her parental rights were enough of a deterrent for her to seek treatment for the problem.

Mother contends FOF 44 is clearly erroneous. She argues that she is going to do everything in her power to get her child back. FOF 44 is not a finding about Mother's future actions or intentions; it is a finding about Mother's past actions, or lack thereof, that indicate she did not seek treatment despite incarceration and termination of her parental rights to her five older children. Mother admitted her problem in this case was similar to her five prior termination of parental rights cases, all of which involved alcohol. Termination of parental rights to older children may be considered in determining whether a parent can provide a safe family home. In re BP, 112 Hawaiʻi 309, 312, 145 P.3d 852, 855 (App. 2006). Mother also admitted that she had been incarcerated seven times since the inception of this case but had not completed any recommended services. FOF 44 is supported by substantial evidence and is not clearly erroneous.

The family court found:

> 58. Under the circumstances presented by the instant case, the DHS gave Mother . . . every reasonable opportunity to succeed in remedying the problems which put the Child at substantial risk of being harmed in the family home and to reunify with the Child.

Mother contends FOF 58 is clearly erroneous because:

> Over the course of the case, the DHS social worker only spoke with Mother once, when Mother called the social worker and that was the only time they spoke. Although the social worker stated she tried to contact mom while incarcerated by contacting the case manager at the jail, the social worker did not make an attempt to visit Mother while she was incarcerated. The social worker stated she didn't attempt to contact Mother's probation officer during the duration of this case.

However, an April 16, 2020 Safe Family Home Report stated that a DHS worker made multiple face-to-face contacts with Mother and Child. Mother stated she did not keep in contact with DHS

because she did not have a phone. Mother also could not be located after her releases from incarceration on October 28, 2019, and on March 22, 2020. DHS social worker Ready testified she did not contact Mother's probation officer because she was not able to contact Mother to obtain her consent to speak with her probation officer. Mother was not able to participate in any services due to being incarcerated. DHS is not required to provide services beyond what was available within the correction system. In re Doe, 100 Hawaiʻi 335, 345, 60 P.3d 285, 295 (2002). Mother admitted DHS offered her services when she was not incarcerated, and DHS never failed or refused to refer her to something she requested. FOF 58 is supported by substantial evidence and is not clearly erroneous.

The family court found:

> 59.    Under the circumstances presented in this case, the DHS treated Mother . . . fairly and serviced the entire family intensely since the start of the DHS and Court intervention with this family.

Mother contends FOF 59 is clearly erroneous because "Mother came up with her own plan to participate in services, she sought out treatment and got applications in without the aid of DHS." As noted above, Mother does not dispute DHS offered her services when she was not incarcerated. The record establishes that Mother entered into two voluntary foster custody agreements with DHS, as part of which she agreed to participate in various programs, but failed to do so. Mother testified that she did not know she had to participate in the programs offered through DHS. FOF 58 is supported by substantial evidence and is not clearly erroneous.

Paragraph B of the family court's September 17, 2020 Order Terminating Parental Rights concluded:

> B    It is not reasonably foreseeable that [Child's] legal mother . . . will become willing and able to provide [Child] with a safe family home, even with the assistance of a service plan, within a reasonable period of time[.]

Paragraph B is a mixed finding of fact and conclusion of law. We review it under the "clearly erroneous" standard because the family court's conclusion is dependent on the facts and circumstances of Mother's case. Estate of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007). A conclusion of law that is supported by the trial court's findings of fact and reflects an application of the correct rule of law will not be overturned. Id.

Mother contends the family court erred in concluding that it is not reasonably foreseeable that she will become willing and able to provide Child with a safe family home within a reasonable time; Mother argues that she "has a plan to provide a safe family home in the reasonably foreseeable future by getting early released to [a] treatment program and maintain sobriety." The uncontroverted evidence showed that Child has been in and out of foster care since December 2017; Child's most recent date of entry into foster care was January 7, 2019. At the time of the trial, Child had been in DHS foster custody for approximately 20 consecutive months, during which time Mother has been unable to provide Child with a safe family home despite her prior participation in various DHS programs and services, and despite the January 7, 2019 court order that she participate in other programs and services, which she failed to do.

The family court correctly applied HRS § 587A-33 to the facts it found, which were supported by substantial evidence. The Order Terminating Parental Rights entered by the family court on September 17, 2020, is affirmed.

DATED: Honolulu, Hawaiʻi, April 5, 2021.

On the briefs:

Kaupenaikaika F. Soon,
for Appellant RC.

Kurt J. Shimamoto,
Julio C. Herrera,
Patrick A. Pascual,
Deputy Attorneys General,
State of Hawaiʻi,
for Appellee Department of
Human Services.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge