IN THE INTEREST OF R.R.
No. 29683.
Intermediate Court of Appeals of Hawaii.
October 14, 2009.
On the briefs:
Patricia A. Brady, for Father-Appellant.
Michael G.K. Wong, Mary Anne Magnier, Deputy Attorneys General, for Petitioner-Appellee.

SUMMARY DISPOSITION ORDER
WATANABE, Presiding Judge, FOLEY and FUJISE, JJ.
Father-Appellant (Father) appeals from the "Order Granting Motion for Order Awarding Permanent Custody and Establishing a Permanent Plan Filed September 17, 2008" (Order Awarding Permanent Custody) entered on February 18, 2009 by the Family Court of the First Circuit (family court), the Honorable William J. Nagle, III presiding.
R.R. is the child of Mother and Father who both suffer from severe mental health issues. On December 30, 2005, shortly after R.R.'s birth, the Department of Human Services (DHS) filed a petition for temporary foster custody (Petition for Temporary Custody) due to the mental health issues of the parents, which included Mother residing at the psychiatric unit of Castle Medical Center at the time of R.R.'s birth and Father being repeatedly told to leave Castle Medical Center because of inappropriate conduct.
For approximately three years between the filing of the Petition for Temporary Custody on December 30, 2005 and trial on. February 12, 2009, DHS attempted to reunite R.R. with Mother and Father, but with the focus on Father. In spite of the prolonged period devoted to reunification and dedicated efforts by Father to participate in services recommended by DHS, Father continued to exhibit anger-management issues, causing him to alienate family and support services. At trial, Mother testified to an incident of domestic violence that occurred the day before trial.
Following trial, the family court entered the Order Awarding Permanent Custody. Only Father has appealed.
On appeal, Father argues that (1) Father never presented a threatened harm to R.R. (2) Father's psychiatric condition was stabilized and Father was compliant with treatment and medication; (3) DHS failed to adequately inform Father of what was required of him; (4) Father's violent behavior toward people other than R.R. was not actual, imminent, or threatened harm to R.R.; and (5) Father was compliant with all of the services recommended by DHS.
The determination of the family court relating to whether a child's parent is, or will become in the foreseeable future, willing and able to provide a safe family home for the child is reviewed for clear error. In re Doe, 95 Hawai`i 183, 190, 20 P.3d 616, 623 (2001); see In re Doe, 103 Hawai`i 130, 135, 80 P.3d 20, 25 (App. 2003). The determination of witness credibility is left to the family court. Fisher v. Fisher, 111 Hawai`i 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawai`i at 189-90, 20 P.3d at 622-23).
Father's insistence that he never presented a threat of harm to R.R. is further evidence of Father's failure to acknowledge the harm to R.R. caused by Father's anger-management and domestic-violence issues. The failure to acknowledge the harm is a factor relevant to the determination of whether or not Father could provide a safe family home. See Hawaii Revised Statutes § 587-25(a)(8).
The fact that Father may have been able to stabilize his psychiatric condition through his considerable efforts to comply with DHS service plans does not necessarily compel a conclusion that he is capable of providing a safe family home for R.R. Father's aggressive behavior continued to be evident up to the day before trial, when he attempted to grab Mother. Because Father's behavior was characterized by periods of compliance followed by periods of belligerence, the opinion of the DHS social worker that Father was not ready to care for R.R. in spite of the opinion of a service provider that Father's condition had stabilized was not unreasonable and was supported by substantial evidence. The family court could reasonably choose to rely upon the conclusion of the DHS social worker. [T]he testimony of a single witness, if found by the trier of fact to have been credible, will suffice." In re Doe, 95 Hawai`i at 196, 20 2.3d at 629.
There was also substantial evidence that the goals of the service plans had been communicated to Father and that any problems in communication were not the cause of the termination of parental rights. DHS communicated repeatedly with Father during the three-year period. At the September 28, 2007 hearing, the family court spoke to Mother and Father about domestic violence:
THE COURT: Just a reminder for both of you, that's a big issue for you, as individuals, but for this case, primarily because how that could affect your son.
Because even when children are little, they see that, it's bad for them, they can get hurt if it happens when you're driving your car. So it's a real big deal.
At that hearing, Father agreed to the September 11, 2007 Family Service Plan which required domestic-violence/anger-management classes that included a focus on learning alternate ways to deal with problems and understanding the effect of domestic violence on the home. In spite of the warning by the family court and the focus of the service plan, Father continued to exhibit angermanagement issues with DHS employees and lost the benefit of services from Helping Hands because he was verbally aggressive with an employee.
In addition to the obvious problems presented by Father's anger-management and domestic-violence issues in the context of providing a young child with a safe family home, Father's specific situation was further complicated by the fact that his anger had alienated his support systems. At trial, Dr. Kathryn Chun testified that Father would need to cooperate with mental health care providers, have available respite support, and be aware of R.R.'s changing needs. She also testified that Father would require long-term professional support. DHS had exhausted the available resources for Father.
While there was evidence that Father did substantially comply with the services required, there was also substantial evidence that he never was able to successfully implement the lessons regarding anger management and domestic violence. Mere compliance with a service plan by a parent does not require the return of a child to parents still incapable of providing a safe family home.
Accordingly, it is hereby ordered that the Family Court of the First Circuit's February 18, 2008 Order Awarding Permanent Custody is affirmed.