**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000557
24-APR-2023
08:07 AM
Dkt. 78 MO**

NO. CAAP-21-0000557

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

IN THE INTEREST OF KY

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(FC-S NO. 18-1-0150)

MEMORANDUM OPINION
(By: Leonard, Presiding Judge, Hiraoka and McCullen, JJ.)

Intervenors-Resource Caregivers-Appellants SY and EY (collectively Maternal Grandparents) appeal the Family Court of the Second Circuit's September 30, 2021 "Findings of Fact Conclusions of Law, Decisions and Orders Following Evidentiary Contested Hearing on [Department of Human Services' (**DHS**)] Motion to Terminate Parental Rights and Establish a Permanent Plan, Filed July 27, 2020" (**Order**).[1]

In denying DHS' motion to terminate parental rights and establish a permanent plan recommending adoption by Maternal Grandparents, the family court ordered DHS to instead prepare a

---

[1] The Honorable Adrianne N. Heely presided.

permanent plan that recommends a legal co-guardianship between Maternal Grandparents and Paternal Grandparents. The family court then ordered that grandparents share equal time with KY, suggesting a week on and week off schedule.

As DHS' proposed permanent plan states, and is evident from the record, KY "is a very loved child by both Paternal and Maternal Families." But the family court here failed to address all the elements of Hawaii Revised Statutes (**HRS**) § 587A-33 (2018) and, thus, abused its discretion.

## I. Background

### A. Foster Custody

KY was born in 2016. This case started when KY ingested his father's "detox medication" while at Paternal Grandparents' home. On December 21, 2018, DHS filed a Petition for Temporary Foster Custody "due to maternal and paternal substance abuse that led to threatened abuse and neglect of" KY. KY was then placed with Maternal Grandparents.

On January 11, 2019, Mother and Father stipulated to awarding DHS temporary foster custody of KY. Father also stipulated to the family court's jurisdiction. The court awarded DHS foster custody of KY and noted KY entered foster care on January 8, 2019. About a month later, Mother stipulated to the family court's jurisdiction and the court continued DHS' foster custody of KY.

On January 9, 2020, the family court entered an Order Continuing Foster Custody, Continuing the Service Plans dated 1/29/19 and 4/16/19 and Setting a Permanency Hearing, stating

"Father stipulates that he could not meet his burden of proof at an order to show cause and why the case should not be set for permanent planning."

On February 10, 2020, Paternal Grandmother filed a Motion to Intervene.

On February 12, 2020, the family court entered an Order Continuing Foster Custody, Continuing the Service Plans dated 1/29/19 and 4/16/19 and Setting a Permanency Hearing, stating "Mother stipulates that she would be unable to meet her burden at an OSC and agrees to permanency."

On April 27, 2020, Maternal Grandparents filed a Motion to Intervene and Acquire Party Status, which the family court granted.

**B.    Motion To Terminate Parental Rights**

On July 27, 2020, DHS filed a Motion to Terminate Parental Rights pursuant to HRS §§ 587A-4, -32, and -33 (2018). With the motion, DHS' social worker, Danielle Egeberg (**Egeberg**), opined that there was clear and convincing evidence:

> a. That the child's legal mother, legal father . . . are not presently willing and able to provide the child with a safe family home, even with the assistance of a service plan;
>
> b. That it is not reasonably foreseeable that the child's legal mother, legal father . . . will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time; and
>
> c. The proposed permanent plan, dated July 23, 2020 which is included in Exhibit "A" and which nominates the DHS as the proposed permanent custodian, is in the best interests of the child[.]

(Some formatting altered.)

3

Attached to the Motion, the July 23, 2020 proposed permanent plan's (**Permanent Plan's**) goal was to "[m]aintain family, culture and community connections with both paternal and maternal families."  The objective was for KY to be "[a]dopted by Maternal Grandparents and maintain visit[s] with Paternal Grandmother and Step Grandfather."  The Permanent Plan explained that

> DHS/CWS will continue supporting visits with all family members that are appropriate.  Once adoption is completed, visits with [sic] be set up through adoptive party.  This SW has spoken with Maternal Grandparents . . . who have stated if they are able to adopt, they will continue to support appropriate visits with other family members of [KY].

DHS' assessment and recommendation stated that it "is recommending adoption with [Maternal Grandparents].  DHS believes that adoption is in the best interest for [KY].  Adoption provides a stable setting for [KY] to be able to grow up in a loving home and not have to worry if he has [sic] going to be moved again."

On August 28, 2020, Paternal Grandmother filed a Motion for Establishment of Proposed Permanent Plan.  Attached to the motion was a "Memorandum in Support of Motion and in Opposition to DHS Proposed Permanent Plan," a Petition for Appointment of Conservator and Guardian, and a Proposed Long-Term Visitation Plan.  Paternal Grandmother stated there was "no reasonable basis" to oppose her having "equal involvement in [KY]'s life" and claimed adoption was not in KY's best interests because, if he was adopted by Maternal Grandparents, he would "undoubtedly lose all contact with the paternal side of the family," as they opposed involvement of Father and his family in Mother's and KY's life.  Paternal Grandmother noted Maternal Grandparents refused

4

to discuss visitation until after adoption occurred or agree to maintain the current timesharing schedule. Paternal Grandmother believed "granting [her] guardianship (or adoption) of [KY] is in his best interests," because she was committed to involving both sides of KY's family on a regular and consistent basis.

Paternal Grandmother claimed "adoption and the imbalance of power that adoption affords just one side of his family (maternal), will result in detrimental emotional and psychological impact to [KY]," and

> although one party may claim they are willing to maintain a relationship between [KY] and both sides of [KY]'s family, there will be no legal recourse for the rebuffed family if those prove to be empty. However, if the guardianship path proposed by [Paternal Grandmother] is employed, the interested party may intervene in the event that the guardianship proves not to be in [KY]'s best interest.

Paternal Grandmother petitioned to be appointed as KY's guardian pursuant to HRS §§ 560:5-106 (2018) and 560:5-108(a) (2018), before parental rights were terminated, stating "[KY] should be determined to be in a safe family home and there is no further need for this child welfare proceeding."

Paternal Grandmother's Proposed Long-Term Visitation Plan included a time-sharing plan for KY up to sixth grade and from sixth grade until KY was no longer a minor. Specifically, the long-term plan detailed custody for each day of the week, and explained details of exchanges between Paternal and Maternal Grandparents, extracurricular activities, holidays, special occasions, school breaks, and vacations. Part II of the document provided rules about communication between the parties and party conduct.

Trial commenced on February 5, 2021, with numerous witnesses testifying: Egeberg (DHS/CWS Social Worker); Yukari Murakami (**Murakami**) (Guardian Ad Litem (**GAL**)); Maternal Grandparents; KY's Aunty; Dr. Heather Wittenberg (expert in child psychology); Dr. Santo Triolo (expert in child psychology); Paternal Grandmother; Jennifer Purcell (expert in field of Marriage/Family therapy and professional visitation supervisor); Paternal Step-Grandfather; and Father.

The family court denied DHS' motion to terminate parental rights of mother and father and establish a permanent plan recommending adoption, found that it was in KY's best interests to have a legal co-guardianship, and ordered DHS to prepare a revised permanent plan that calls for a legal co-guardianship between Maternal Grandparents and Paternal Grandparents:

1. <u>The Motion to Terminate Parental Rights filed July 27, 2020 and Establish the Permanent Plan of Adoption is DENIED</u>. The court finds that the elements of H.R.S. §587A-33(a)(3) and (4) and DHS' Permanent Plan calling for adoption to [Maternal Grandparents], have not been proven by clear and convincing evidence. Further, since the elements of §587A-33 have not all been met, the court also DENIES the DHS' request to terminate parental rights of Mother and Father.

2. The court further finds that [Paternal Grandparents] have met the burden of challenging the Permanent Plan calling for adoption to the [Maternal Grandparents], by the legal standard preponderance of the evidence.

**3.** <u>Pursuant to H.R.S. §587A-32 and §587A-33; the court finds it in the best interest of the child that a legal co-guardianship be adopted for [KY]</u>. Further, DHS shall prepare revised permanent plan which calls for a legal co-guardianship and prepare a petition for co-guardianship naming [Maternal and Paternal Grandparents] as joint legal and joint physical co-guardians, with [Maternal Grandparents] having tie breaking authority as it relates to educational decisions to be made for [KY], and [KY] shall remain in [Maternal Grandparents'] home . . . . As co-guardians, [Maternal and Paternal Grandparents], for as long as the parents are unable to provide for [KY], shall act in the best interest of [KY] and be familiar with the duties, rights and immunities of

6

Guardians, if an emergency decision needs to be made, the guardian with physical custody of [KY] shall make said decision with consultation with the treating professional and update the non-custodial guardian and parent as soon as practicable.

4. Effectively [sic] immediately, pending the legal co-guardianship, [Maternal and Paternal Grandparents] shall equally share time with [KY], with a suggested week on week off schedule, and exchange day on Sundays 5 p.m., unless [Maternal and Paternal Grandparents] reach a better day for exchange; so that the co-guardian may ready [KY] for [KY's] preschool/weekly activities. The court is also suggesting that the co-guardians share equally Holidays/Vacations and School Breaks (i.e. Fall Break/Winter Break) with [Maternal Grandparents] having the first half and [Paternal Grandparents] having the second half of those school breaks.

5. Pursuant to H.R.S. §587A-33(h)(3)/(4), the court further orders the parties: DHS; Mother; Father; [Maternal Grandparents]; [Paternal Grandparents] along with their counsel and [KY's] [GAL] to appear for a permanent plan/review/permanency hearing in six months. At this hearing, the court shall be presented with the parties' proposed parenting plans with specific timesharing/holiday schedule, and status updates on Father and Mother's progress.

(Emphases added.) Maternal Grandparents timely appealed.

## II. Standards of Review

### A. Family Court Decisions

> Generally, the family court possesses wide discretion in making its decisions and those decision[s] will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawaiʻi 183, 189-90, 20 P.3d 616, 622-23 (2001)).

### B. Statutory Interpretation

"Statutory interpretation is a question of law reviewable de novo." In re R Children, 145 Hawaiʻi 477, 482, 454 P.3d 418, 423 (2019) (citation omitted).

7

## III. Discussion

On appeal, Maternal Grandparents contend in their points of error that the family court erred in denying DHS' motion to terminate parental rights and establish a permanent plan of adoption.[2] Maternal Grandparents argue that adoption is preferred and the family court incorrectly applied the law.[3]

Maternal Grandparents explain, "[s]ince both Father and Mother had stipulated to the first two elements needed in order to terminate their parental rights, the issue before the Court during the trial was whether there was clear and convincing evidence that the Permanent Plan prepared by the DHS was in [KY's] best interests." Maternal Grandparents point out that Mother and Father have not been able to provide KY with a safe home for over two years, and that "there was clear and convincing evidence that the Permanent Plan for adoption was in [KY's] best interests because it would provide that closure and stability."

HRS § 587A-33(a) governs the termination of parental rights, providing in part:

> At a termination of parental rights hearing, the court shall determine whether there exists <u>clear and convincing evidence</u> that:

---

[2] Maternal Grandparents raise two more points of error challenging Conclusions of Law (**COL**) numbers 1-28 and Findings of Fact (**FOF**) numbers 62, 63, 65, 67, and 69. They, however, do not provide a corresponding legal argument as to each COL and FOF they challenge. Rules Expediting Child Protective Appeals Rule 11(a)(4) (explaining that the opening brief shall include a "[c]oncise legal argument about each point of error with citation to legal authority"). Instead, they appear to challenge these COL and FOF in the context of their challenge to the family court's denial of the motion to terminate parental rights. We address these COL and FOF in the same manner.

[3] In support of their point of error, Maternal Grandparents also argue that the family court (1) failed to provide a compelling reason for guardianship, (2) violated their due process rights, and (3) usurped DHS' right to prepare its own permanent plan by ordering DHS to prepare a permanent plan for legal co-guardianship. But, we need not reach these arguments in light of our decision to vacate the September 30, 2021 Order and remand this case for further proceedings.

(1)    A child's parent whose rights are subject to termination is not presently willing and able to provide the parent's child with a safe family home, even with the assistance of a service plan;

(2)    It is not reasonably foreseeable that the child's parent whose rights are subject to termination will become willing and able to provide the child with a safe family home, even with the assistance of a service plan, within a reasonable period of time, which shall not exceed two years from the child's date of entry into foster care;

(3)    The proposed permanent plan is in the best interests of the child.  In reaching this determination, the court shall:

    (A)    Presume that it is in the best interests of the child to be promptly and permanently placed with responsible and competent substitute parents and family in a safe and secure home; and

     (B)    Give greater weight to the presumption that the permanent plan is in the child's best interest, the younger the child is upon the child's date of entry into foster care; and

(4)    The child consents to the permanent plan if the child is at least fourteen years old, unless the court consults with the child in camera and finds that it is in the best interest of the child to proceed without the child's consent.

(Emphases added.)  Clear and convincing evidence is defined as the "degree of proof that will produce in the mind of the trier of fact a firm belief or conviction that the fact sought to be proved is true.  This measure falls between the preponderance standard of typical civil cases and the beyond-a-reasonable-doubt standard of criminal cases."  HRS § 587A-4.

Here, the family court denied the motion to terminate parental rights and establish a permanent plan of adoption because HRS § 587A-33(a)(3) and (4) were not proven by clear and convincing evidence.

We first note that Mother and Father stipulated to subsections (a)(1) and (a)(2). We next note that KY was not "at least fourteen years old" so subsection (a)(4) was inapplicable to this case. HRS § 587-33(a)(4). Thus, by citing DHS' failure to prove subsection (a)(4) as a basis for denying DHS' motion to terminate parental rights and establish a permanent plan of adoption, the family court abused its discretion.

Turning to subsection (a)(3), the family court was tasked with determining whether the Permanent Plan was in KY's best interests. See HRS § 587A-33(a)(3)(A). In so doing, the family court was required to presume that it was in KY's best interest "to be promptly and permanently placed with responsible and competent substitute parents and family in a safe and secure home[.]" HRS § 587A-33(a)(3)(A).

Egeberg, DHS' social worker, testified that this case started when KY "ingested detox medication in December 2018 while being supervised by" Paternal Grandparents. She further testified that Maternal Grandparents have provided KY with a stable setting and can take care of KY. Maternal Grandparents made clear that KY was their focus. The family court found this testimony credible.

Murakami, KY's GAL, testified in support of the Permanent Plan and adoption by Maternal Grandparents. She also testified that Paternal Grandparents are an important part of KY's life and she recommends continued visitation with them. The family court found this testimony credible.

10

The family court then concluded that Maternal Grandparents "are responsible, competent individuals able to provide [KY] with a safe, secure home." Based on § HRS 587A-33(a)(3)(A), the family court was required to "[p]resume that it is in the best interests of [KY] to be promptly and permanently placed with responsible and competent substitute parents and family in a safe and secure home."

The family court was also required to "[g]ive greater weight to the presumption that the permanent plan is in the child's best interest, the younger the child is upon the child's date of entry into foster care." HRS § 587A-33(a)(3)(B). KY was about two years and four months old when he entered foster care. Thus, the family court should have given great weight to the presumption that the proposed permanent plan recommending adoption was in KY's best interests.

Based on the evidence, the family court's denial of DHS' motion to terminate parental rights and establish a permanent plan recommending adoption does not align with the mandatory presumption and the greater weight accorded in determining whether the permanent plan is in KY's best interests. And the family court made no findings or conclusions to explain this divergence.

The family court thus abused its discretion by denying DHS' motion to terminate parental rights and establish a permanent plan recommending adoption without explaining how the

11

statutory presumptions and weight factored into its analysis, and how they were rebutted.

## IV. CONCLUSION

Based on the foregoing, we vacate the family court's September 30, 2021 Order and remand this case for further proceedings consistent with this opinion.

DATED:  Honolulu, Hawaiʻi, April 24, 2023.

On the briefs:

Francis T. O'Brien,
for Intervenors-Resource
Caregivers-Appellants,
Maternal Grandparents.

Erin Lea Lowenthal,
for Intervenor-Appellee,
Paternal Grandmother.

Adriel C.S. Menor and
Julio C. Herrera,
Deputy Attorneys General,
for Petitioner-Appellee,
Department of Human Services.

Renata Foster-Au,
for Mother-Appellee.

Nicole Forelli,
for Father-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge